## L. T. LESTER v. S. L. ELLIOTT.

### Decided June 8, 1901.

**1.—State School Land—Conflict of Applications—Presumption as to Time.**

Where plaintiff and defendant each applied to purchase the same section of State school land, and the record fails to show which application reached the Land Commissioner first, other than that they reached the General Land Office on the same day, and the file mark of defendant's application was 41,114, while that of plaintiff's was 41,758, it is to be concluded in favor of the Commissioner's award of the land to defendant that his application was received before that of the plaintiff.

**2.—Same—Application Before Land on the Market.**

Where an application to purchase State school land was made out before the county clerk on the same day, but a few hours before, he received from the Land Commissioner a reclassification and appraisement of the land, and notice placing it on the market, and after the receipt of such notice the clerk added his jurat to the affidavit and filed the application, and forwarded it to the Commissioner, the application was not invalid as having been made too soon.

3.—Same—Collusion—Public Policy.

An agreement between the county clerk and an intending purchaser of State school land that the former should act as the agent of the latter in making out an application to purchase, whereby the latter might obtain a preference or unfair advantage over other intending purchasers, would, it seems, upon grounds of public policy, render the application void. See evidence held not to present such a case.

Appeal from Hale. Tried below before Hon. S. I. Newton.

*Wilson & Kinder* and *George E. Miller,* for appellant.

*Rosson & Wayland* and *Green & Stewart,* for appellee.

HUNTER, Associate Justice.—Elliott brought this suit in trespass to try title on February 24, 1899, against Lester to recover section 8, block A3, Gulf, Colorado & Santa Fe Railway Company public school land lying in Hale County. The defendant pleaded not guilty. The case was tried by the court without a jury and judgment rendered for the plaintiff, and Lester has appealed.

The record shows that each party was a settler upon a home section and the section in controversy was within a radius of five miles of each of their home sections, and each was entitled to purchase the land as additional grazing land. It was reclassified as dry grazing land and appraised at $1 per acre by the Commissioner of the General Land Office, and placed on the market by him on December 29, 1897, the clerk of the County Court of Hale County having received from the Commissioner notice of such reclassification and appraisement on that day at 6 o'clock p. m. At about 10 o'clock that day, and before the clerk received the notice and list from the Commissioner, Lester filled out an application and obligation to purchase the section at $1 per acre, and verified the application before the county clerk, and left them with the clerk to complete by adding his jurat and inserting date after the notification was received by the clerk, which notice from the Commissioner was expected to arrive by the 6 o'clock mail. The jurat and date were added by the clerk after the notice was received and filed, and the application, obligation, and cash payment were forwarded by the mail to the Commissioner and Treasurer, respectively, as required by the statute. On the next morning, December 30, 1897, Elliott made out his application and obligation, and, together with the cash payment required, forwarded them by mail, and the record fails to show which application reached the hands of the Commissioner first, but the Commissioner's file mark on Lester's application was 41,114, while that on Elliott's was 41,758. Elliott's application was also indorsed: "Received 7:50, 1.3.1898," while Lester's was indorsed: "Received 1.3. 1898," with no hour or minute given. The land was awarded and sold by the Commissioner to Lester on April 6, 1898, and in October of said year Elliott was notified that his application was rejected.

In support of the action of the Commissioner we conclude from these

facts that Lester's application was received by him before Elliott's; the file number indicates it, and the award and sale to him do also.

The learned district judge who tried the case found as matter of law: "That the burden of proof was upon plaintiff (Elliott) to show that his file reached the Land Office first in point of time and failing to do so should not recover upon this point. That the Lester file being made before the clerk received the notice of the Land Commissioner, was an invalid file, and plaintiff should recover."

To this last conclusion of his honor, that Lester's file was invalid, error is assigned, and we think must be sustained. His honor seems to have entertained the opinion that because Lester made out his application and swore to it before the county clerk had received the notice of reclassification and appraisement from the Commissioner, his application was, therefore, invalid. In this we think that the learned judge was in error. It is of no consequence when the application was written out and sworn to, except that the facts stated therein ought to be true when made and true when filed in the Land Office. The application, in contemplation of law, is not made until it is filed in the Land Office, and if the statements contained therein are true *then,* and the land is *then* on the market, that is, if the county clerk has *then* received notice of its classification and appraisement, the application is good; and if the applicant has complied with the law in all other respects, and his application is received first in point of time after the clerk had received the notice aforesaid, he is entitled to purchase the land, and it would be the duty of the Commissioner to accept his bid and award it to him. Martin v. Marr, ante, p. 55.

This determines the only important question raised by the record, and must result in the reversal of the judgment.

The trial court having found the facts substantially as we have stated them, it becomes our duty to render the judgment here which that court should have rendered. It is therefore ordered that the judgment in this case be reversed, and we here now render the same in favor of appellant, and the clerk of this court is directed to enter it accordingly.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

CONNER, Chief Justice.—I concur with Justice Hunter in the conclusion that the motion for rehearing should be overruled, but in view of the question so ably pressed on the submission by counsel for the motion, I wish to add that, while inclined to agree with them in the contention that an agreement between a county clerk and an intending purchaser of school lands that the former should act as the agent of the latter, whereby such intending purchaser might obtain a preference or unfair advantage over others also desiring to purchase, would be void on the ground of public policy, yet no such case in my judgment is shown by the evidence in this case. W. B. Martin, the county clerk, testified

on this point as follows: "Lester made his application before me on December 29th, at about 10 o'clock a. m. He signed and swore to it at the time, but I did not put the date in and affix the jurat to it until after the mail came in that evening. I did not see Lester after the mail came in that evening. I mailed the same on the morning of the next day, the 30th. I went to the postoffice very early, and before the mail left, and gave the letter, together with other letters, to the postmaster, and told him I was especially anxious for them to leave on that mail. I saw Lester in Plainview late that evening, but not after the mail arrived."

Appellant Lester testified: "I made the application at Plainview; made the same and swore to it before him (W. B. Martin) on the 29th of December, 1897; made the same, as I recollect it, late in the evening of that date. I remained in Plainview that day until the mail came in; it arrived late that evening, about dusk. I don't remember now whether I saw the clerk after the mail came in that evening or not."

Appellee Elliott testified: "I came to Plainview on the 29th of December, 1897. I met Lester that evening going home from Plainview. He was about 6 miles from Plainview. I am sure it was the 29th when I met him."

J. S. Highsmith testified: "I was postmaster at Hale Center on December 30, 1897; the plaintiff made his applications for the land before me. I made them out and mailed them to Hon. A. J. Baker, at Austin. I put special delivery stamp on the letter. I made them about noon, and mailed them a short time after. The mail going the most direct route to Austin from Hale Center goes through Plainview. It leaves Hale Center in the evening and goes to Plainview that night. Next morning it goes from Plainview to Amarillo, thence to Fort Worth, thence to Austin, and the letter which I mailed for plaintiff at Hale Center on the 30th, going by direct mail route, should have reached Austin between 5 and 6 o'clock on the following Sunday morning, if nothing should happen to prevent it. I got Elliott's letter off on mail same day it was made. A letter leaving Plainview on the morning of the 30th, going by direct mail route, should have reached Austin at the same time in the morning of the day before, which would have been on Saturday."

This is the entire evidence upon which appellee can rest his contention. There is no other evidence from which to infer that the clerk agreed to act as appellant's agent, or that the clerk's act in mailing the letter containing his application, etc., was other than a friendly act that could lawfully be performed.

Appellee testifies that he went to Plainview on the same evening appellant made his application, and there is not the slightest effort to show that the clerk refused him any information, or that in any way the clerk's act gave appellant an advantage, and the proof shows both applications arrived in Austin on the same day and evidently by the same mail. The Commissioner, under date of October 19, 1898, wrote appellant that no application was ahead of his, assigning other reasons why

the award was made to Lester. If the two applications arrived at the same time, a fair discretion in the Commissioner to determine to whom the award shall be made, it seems to me, must be conceded to exist. At all events, no such evidence of agreement or agency exists as, in my judgment, is sufficient to bring this case within the principle of law contended for in behalf of appellee. The case was evidently tried on no such issue. The invalidity of Lester's file as held by the trial court rests alone on the fact that his application was sworn to a few hours before the clerk received the written notification of the classification and appraisement from the Commissioner.

In the foregoing conclusions Justice Hunter concurs, but the writer wishes to add that in view of the fact that the law takes no notice of parts of a day, and of the further fact that Lester's affidavit was true at all times involved, I felt on the original hearing, and remain of the opinion, that the mere circumstance that Lester, in the way of preparation, made his application a few hours before receipt of the notice by the clerk ought not to invalidate it, though it might be otherwise if the application and affidavit had been made a day, week, or month before. In other words I feel unwilling to be understood as having agreed on the original submission, or as now agreeing, that it is under all circumstances immaterial when the application is made, provided only, as stated in the original opinion, the statements therein are true at the time the land is placed on the market. I think the language in the original opinion to this effect is to be limited to the very case here made. As so limited I agree thereto, and join in the conclusion that the motion for rehearing should be overruled.

*Overruled.*

Writ of error refused.

Stephens, Associate Justice, did not sit in this case.