Case 9.—ACTION BY MORRIS GOFF AGAINST HIS GUARD-
IAN, THE SHELBY COUNTY TRUST CO.

## Goff's Guardian v. Goff.

Appeal from Shelby Circuit Court.
R. F. Peak, Circuit Judge.

Judgment for Plaintiff. Defendant Appeals. Reversed.

1.  Guardians—Liability for Interest—Diligence—Good Faith—It is a matter of common knowledge that the rate of interest fluctuates, and if conditions arise which make it impossible for a guardian after the exercise of reasonable diligence and absolute good faith to keep his ward's money loaned at the rate of 6 per cent, per annum, there is nothing in the statute, when reasonably construed, which holds him responsible for deficit in the income, which it was beyond his power to prevent.

2.  Using Ward's Money—Legal Interest—Where a guardian uses the estate of his ward in his own business, or mingles his ward's money with his own, so that it becomes undistinguishable, then he must account for at least, legal interest thereon, and if it be shown that he made a greater profit, he must account for that also.

3. Inability to Find Investments—Diligent Effort—Accountability—Where a guardian in the exercise of reasonable diligence and absolute good faith, is unable to procure 6 per cent. interest on his ward's money, he is only accountable for the greatest rate which he could have procured under the circumstances. And if he was not able by the exercise of reasonable diligence to loan the money for the given period, or to find remunerative investment for it, then he is not accountable for interest during such period.

WILLIS & TODD and J. C. BECKHAM & SON, for appellant.

## POINTS AND AUTHORITIES CITED.

For appellant, we desire to submit to this Court three points or questions why this case should be reversed

First, the case was prematurely submitted, tried, and determined, over the objections, motions, and affidavits of the appellant.

Second, the appellant, as guardian, could not be charged with 6 per cent. interest at bi-ennial rests on the funds in its hands as such guardian regardless of the fact whether it made same or not. But it should only be charged with such sum as it actually made when it acted in good faith, with diligence, and made such investments in interest bearing securities as prudent business men exercise when investing their own means for like purposes.

Third, if it were the law that appellant was liable for 6 per cent. on the funds in its hands, as guardian, whether same was made or not then the judgment of the court is much too large.

## AUTHORITIES CITED.

Civil Code, Sec. 364; Smith v. Ferguson, 3d Metcalf, 424; Moses v. Bush, 3d Bush, 405; Gruel v. Smally, 1st Duvall, 358; Revised Statutes of Kentucky, Chap. 43, Art. 2, Sec. 10; General Statutes, Chap. 48, Art. 2, Sec. 10; Kentucky Statutes, Section 2035; Kentucky Statutes Section 4706; Fidelity & Safety Vault Co. v. Glover, 90th Ky. 355; Durrett's Grn. v. Commonwealth, 90th Ky. 312; Phillips v. Burton etc., 107th Ky., 88.

P. J. BEARD, for appellee.

## CITATIONS AND REFERENCES.

Ky. Statutes, sections 2035 and 2037; General Statutes, Chapter 48, Article 2, section 10 and 20; Revised Statutes, Chapter 43, Article 2, sections 10 and 12; Acts 1850, 1851, Vol. 1, sections 10 and 12; Maupin v. Dulaney, 5 Dana, 594; Karr's Admr. v Karr,

6 Dana, 6; Hagins v. McClure, 7 Bush 379; Tanner v. Skinner, 11
Bush, 130; Finnell' v. O'neil, 13 Bush, 179; Campbell v. Golden,
79 Ky. 544; Abshire v. Roe, 112 Ky. 553; Hedges v. Hedges, 24
Ky. L. R. 2221; Phillips v. Burton, 21 Ky. L. R. 721; Offutt v.
Devine, 21 Ky. L. R. 1500; Clark v. Anderson, 10 Bush, 105;
Page's Executor, v. Holmes, 82 Ky., 574; Pomeroy Equity, Vol.
2, section 1076.

OPINION BY JUDGE BARKER—Reversing.

In 1893 the appellant, Shelby County Trust Company, qualified as guardian of the appellee, Morris Goff, and received possession of the estate of its ward, amounting to $15,076.58. On the 10th day of January, 1894, it made a settlement of its accounts in the county court, as required by law, and thereafter every two years until the final settlement in 1904, at which time the ward had arrived at the age of 21 years and his estate was turned over to him. Afterwards this action was instituted to surcharge the settlements of the guardian's accounts; the petition claiming, substantially, that it was the duty of the latter to make the trust estate (which consisted of money) produce a gross interest of 6 per cent. per annum, and that it had failed to do so. The guardian pleaded that it had made the ward's estate produce all that it was possible by the exercise of reasonable diligence on its part, and that it had accounted and paid over to him all that was due. All of the affirmative allegations of the answer were negatived by a reply, and the issues thus completed. The trial court adopted the theory of the appellee that, under the statute, the guardian was responsible to its ward at all hazards for interest on the money estate in its hands at the rate of 6 per cent. per annum, compounded at biennial rests, and referred the case to his commissioner to report the sum due. The commissioner reported that, on the theory upon which the order of reference was made, there was $1,623.85 due to the ward. The exceptions of appellant to this

report were overruled, and a judgment entered that appellee recover of appellant the amount found to be due by the commissioner's report. From this judgment the appellant is here on appeal.

There is no pretense in this case that there is any error in appellant's accounts, except that from 1896 to 1904 the estate was not made to produce interest at the rate of 6 per cent. per annum. Appellee insists that, under section 2035, Ky. St. 1903, a guardian is liable for interest at the rate of 6 per cent. per annum on all the money in his hands, without reference to the question as to whether or not he made that rate of interest, or was able to do so by the exercise of reasonable diligence. On the contrary, appellant contends that it is only responsible to the ward for the greatest income it could secure by the exercise of reasonable diligence and good faith. Section 2035, Ky. St. 1903, is as follows: "If, from any source, a balance is owing by a guardian at the end of any year, counting from the time of his appointment, which ought to have been invested or loaned out for the benefit of the ward in reasonable time, but which remains in the hands of the guardian, he shall be charged with interest from the end of the year in which such balance arose; and thereafter he shall be charged with interest upon interest in biennial rests, and the guardian shall account to his ward for whatever profit or rate of interest he receives from loans or investments of the trust funds."

We have been cited to no case holding that this statute prescribes an iron-bound rule by which the guardian must account for interest at the rate of 6 per cent. per annum, although the condition of the money market during the period was such as to render it impossible to secure that rate for its use; nor does the language of the statute authorize so arbitrary a construction. The law never requires impossibilities, and, if the statute is open to two con-

structions, that ought to be adopted which does not result in requiring an impossibility of the trustee. It is a matter of common knowledge that the rate of interest for the use of money fluctuates, as do all other commodities and instruments of commerce, under the influence of the inexorable law of supply and demand; and if conditions arise which make it impossible for a guardian, after the exercise of reasonable diligence and absolute good faith, to keep the ward's money loaned at the rate of 6 per cent. per annum, there is nothing in the statute, when reasonably construed, which holds him responsible for a deficit in the income which it was beyond his power to prevent. Any other conclusion would result in making it impossible to secure honest and solvent guardians for the estates of infants, and would thereby result in great detriment to those whose immaturity of judgment requires the supervisory care of age and experience to foster and preserve their estates until they arrive at years of discretion.

Of course, if a guardian uses in his own business the estate of his ward, or if he mingles his ward's money with his own, so that it becomes undistinguishable, then he must account for at least legal interest, because the law will not hear him say, when he uses the trusts funds himself, that money was not worth the legal rate. The trustee is not permitted to deal with himself, and, if he does, he must account for legal interest; and, if it be shown that he made a greater profit, he must account for that also. But where the guardian, in the exercise of reasonable diligence and absolute good faith, is unable to procure 6 per cent., he is only accountable for the greatest rate which could have been procured under the circumstances; and if he was not able, by the exercise of reasonable diligence, to loan the money for the given period, or to find rmunerative investment for it, then he is not accountable for interest during such

period. Undoubtedly there may be found cases where the courts say that guardians are responsible for balances in their hands at the legal rate of interest, with biennial rests; but an examination of these shows that the question we have under discussion was not presented. In other words, no question was made of the inability of the guardian, after the exercise of reasonable diligence and good faith, to secure a rate of interest equal to 6 per cent., or that he was not able to find an investment for the money at all for a given period.

A guardian is not required to be the insurer of the safety of his ward's property. His measure of responsibility for the preservation of the estate intact is that he shall exercise reasonable diligence and good faith; and certainly he should not be held to a higher standard of dealing with reference to securing interest than in preserving the principal. In the case of Clark and Wife v. Anderson, 10 Bush, 99, the measure of the guardian's responsibility in the matter in hand is thus stated: "Appellee (the guardian) having voluntarily become the paid agent of his ward, and having loaned the trust funds to himself, we see no reason why he shall not be held to have received the interest and reloaned it as often as a prudent business man under like circumstances would have done had the estate been his own. The rule of a trustee's accountability for interest, as stated in the case of Maupin's Ex'r v. Dulaney's Devisees, is that he is chargeable with the interest actually received, or with such as in the prudent and faithful discharge of his duties he ought to have received." And in Maupin's Ex'r v. Dulaney's Devisees, 5 Dana, 589, 30 Am. Dec. 699, the rule as to trustees is thus stated: * * * "Maupin was not, upon general principles of equity, chargeable with more interest than he actually received, or, as a faithful and prudent fiduciary, he ought, and therefore should be, presumed to have

received." In the case of Knowlton v. Bradley, 43 Am, Dec. 609, the Supreme Court of New Hampshire said: "If a guardian or trustee keeps the funds of his trust separate from his own, and accounts for the interest received, he is not to be charged when the money lies idle, except for his neglect; and it cannot be considered neglect if a sum sufficient to meet contingent expenses be kept on hand, or if a sum so small that a prudent person would not seek an investment for it lies idle. But if he mixes the money with his own, and keeps no separate account, he must be charged with interest at 5 per cent. annually, at least, and his bondsmen may be liable in case of loss."

An examination of section 2035 shows that the guardian is not to be charged at all hazards with interest upon any balance remaining at the end of any year, but upon such balance remaining which ought to have been invested or loaned out for the benefit of the ward within a reasonable time; and it is upon this "he shall be charged with interest from the end of the year in which such balance arose." This is quite different from providing that the guardian shall be accountable for interest upon every balance remaining in his hands at the end of a year. It cannot be reasonably said that a balance remains in the hands of the guardian which ought to have been invested or loaned out for the benefit of the ward, if it was not possible to make the loan or investment. We conclude therefore both upon reason and authority that the guardian is not responsible under the statute at all hazards for interest on balances remaining in his hands at the rate of 6 per cent. per annum, but that he is required to exercise diligence and good faith to make the estate of his ward productive, and is responsible for any loss or deficit in its income arising either from want of good faith or the exercise of due diligence.

In the case at bar the evidence shows, without any sort of contradiction, that the guardian exercised both diligence and good faith in seeking to make the estate of its ward productive. It shows that, from 1896 to 1904, the demand for money was such as to make it impossible for the trustee to keep its funds steadily invested at the level rate of 6 per cent., and this conclusion is not at all militated against by showing that the banks could loan money at 6 per cent. A guardian is required to lend the money of his ward upon more stable security than banks may take, where the funds are invested at short periods with personal security. Nor is our conclusion shaken by the showing that in a majority of instances (counting the number of mortgages) the appellant received 6 per cent. The evidence shows that, in amount, from 70 to 75 per cent. of its funds was invested at a less rate than 6 per cent., and appellee made no effort to contradict appellant's testimony that upon a large part of its investments it received interest at a rate less than 5 per cent. There was no commingling of the trust fund with the funds of the trustee. The evidence shows that the account with each cestui que trust was kept separate, and that while sometimes, in order to make up a large loan, funds were drawn from separate estates and a note for the aggregate sum taken in the name of the trustee, yet the share of each estate was indorsed upon the note, and a perfect record kept of the transaction. This was all that was required of appellant by either the rule of good faith or diligence.

We are strengthened in our opinion as to the meaning of the statute by the fact that section 4706, Ky. St. 1903, authorizes the holders of funds in a fiduciary capacity to invest them in such interest-bearing or dividend-paying securities as are regarded safe by prudent business men. It is a matter of common knowledge that such securities do not always bear in-

terest at the rate of 6 per cent. per annum, and it would be an anomalous construction that would permit the guardian to invest the trust funds in stocks and bonds producing a less income than 6 per cent., and, on the other hand, hold him responsible for more than the current rate of interest if he sought to lend it on such securities as collateral.

We have not considered the correctness of computation, or as to whether or not the answer admits a small indebtedness due the ward. These do not affect the principle decided, and any error as to them may be readily corrected upon a return of the case to the trial court.

The judgment is reversed for proceedings consistent with this opinion. .

NUNN, J., dissents.