## Bolling v. Ford, et al.

(Decided March 5, 1926.)

### Appeal from Pike Circuit Court.

1. Trusts—Recovery from Trustees for Breach of Trust Held Confined to Amount Claimed in Pleadings.—In suit against trustees for breach of trust in failing to sell land advantageously, owner's recovery is limited to damage claimed in pleadings, regardless of actual loss.

2. Trusts—Trustees Attempting to Get Title to Trust Property Held Guilty of Fraud.—Where property was placed in hands of trustees to be sold at most advantageous price obtainable, it was a fraud for trustees to cancel advantageous contract of sale and contract to sell to another to enable them to obtain title for themselves.

3. Fraud—Fraud May be Proved by Circumstances.—Fraud may be established by circumstances, since it is difficult to obtain clear proof thereof.

4. Trusts—Trustees Acting in Bad Faith Held Liable in Damages to Owner of Trust Property.—Trustees whose duty was to sell land at most advantageous price obtainable held liable in damages to owner, where they fraudulently attempted to obtain complete title to land for themselves.

JOHN D. CARROLL and JOHN S. CARROLL for appellant.

PICKLESIMER & STEELE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The appellant, J. M. Bolling, whom we will call the
plaintiff, sought to recover damages of the appellees, J.
W. Ford, J. E. Ratliff and W. B. Taylor, whom we will
call the trustees, for breach of trust. He was unsuccess-
ful, and has appealed. At the outset, we think it well to
explain that the correct spelling of this name, as shown
by the signatures of parties in this record, is "B-o-l-l-
i-n-g." In many places it is spelled "B-o-w-l-i-n-g,"
both in this record and the two former opinions, which
are reported in 172 Ky. 32, 188 S. W. 1070, and 181 Ky.
737, 205 S. W. 927. A better understanding of this
opinion will be had by reading these former opinions be-
fore this one, as many of the facts out of which this liti-
gation grew are so well stated in those opinions that we
shall not repeat them here.

On December 23, 1916, a trust agreement was made
by which certain property of the plaintiff was placed in
the hands of these trustees to be sold by them for the
most advantageous price obtainable. The trustees seem
to have forgotten their duty to the plaintiff and to have
treated this property as their own, to manage and dis-
pose of for their own advantage. Their course reminds
us of the boy who, having borrowed a pocketknife, was
anxious to trade it off and thereby get one of his own.
When the plaintiff discovered what they were doing, he
hastily arranged to sell this property for the best price
he could, and in the case reported in 181 Ky. 737, we up-
held the sale and intimated that these trustees, by the
course adopted, had imposed a loss on the plaintiff. That
these trustees were answerable to plaintiff for any loss
he sustained by their failure to endeavor in good faith
to sell this property for the most advantageous price to
him is clear; that they did not act in good faith is clear;
that plaintiff should, under the circumstances, have en-
deavored to make for himself the best sale he could, and
thus minimize his loss, is equally clear. No one can read
this record and escape the conclusion that the plaintiff
did the best he could under the circumstances. He was
sick. His creditors were clamoring for payment of their
debts, his trustees, who were to manage and sell his prop-
erty, were pursuing a course calculated to benefit the
trustees, rather than the plaintiff and his creditors.
Plaintiff's condition may be compared to that of a man
whose house is afire. If he hopes to save anything, he

must act quickly. He did, and we approved his action in the former case.

The question in this case concerns the action of the trustees. It is not necessary for us to determine whether the contract they made with Johnson was made on February 24 or March 19. If made on February 24, it was made at a time when a contract to sell the property for more money was alive and outstanding, and therefore vicious. If made on March 19, it was made at a time when plaintiff had paid all his debts, when this trust had been terminated, and the mischief was even more offensive.

Having reached these conclusions, the question left is: For how much are the trustees responsible? Plaintiff in his brief says he established by Fon Rogers that this property was worth $100.00 per acre, but it is not necessary for us to consider that, for he only sued for $333.33, paid out for attorney's fees and $5.00 per acre loss on his land. If he had established beyond doubt this land could have been sold for $500.00 per acre, his recovery would still be limited to what he claimed in his pleadings.

Coming now to the question of whether his proof sustained his claim, we find it to be admitted that a contract had been made with Morgan to sell him this property at $60.00 per acre, and Morgan testified he had made the necessary arrangements to secure the money to pay for the land; that the company with which he had made this arrangement was financially able to have taken up and paid for the property, and stood ready to do so, until the day before he released the contract. He further testified that these trustees a few days after this contract was signed, began trying to get him to release it, and to threaten to sue to procure a cancellation of it, and that he released it to avoid a controversy. He testified that he paid $64.00 per acre for neighboring coal. The evidence is convincing that but for this meddling by these trustees, this sale would have been made. Then why should not these trusteees make good to the plaintiff the $2,150.00 he lost by the cancellation of this Morgan contract and the $333.33 plaintiff claims for attorney's fees expended by him in an effort to rid himself of the Johnson contract, which the trustees should not have made? The evidence shows that this contract made with Johnson, who was acting as trustee for himself, Tom Hatcher, J. W. Ford and W. B. Taylor, was not made for the pur-

pose of furthering the interest of the plaintiff and securing the most money possible out of this property, but was made for the purpose of enabling the trustees to get title to this property for themselves. They had tried to induce the plaintiff to convey it directly to them, and he had refused, and being unable to acquire title to it directly, they attempted by this Johnson contract to do so by indirection. The purpose of getting title to this property by means of the Johnson contract is disclosed in the evidence of Day, wherein he testified that Ford intimated that some arrangement existed between them and Johnson by which this property was to be leased out and "would be a drawing account for their children after they were dead." Of course, that is a fraud, and like other frauds, the proof of it is not clear. Parties contemplating the commission of a fraud do not usually blow a horn or beat a drum to call attention to what they are doing; but frauds may be established by circumstances, and this one was. There is not a line of evidence here to show any effort that these trustees made to sell this property. They do not claim they advertised it; that they sought to interest anybody in it; that they offered it for sale to any one, or made any effort whatever to carry out the purposes for which this property was placed in their hands.

The trustees, in their brief, quote from the case of Fox v. Harris, 26 A. L. R. 806, 119 Atl. 256, 141 Md. 495, wherein the court said: "This court has always treated trustees acting in good faith with great tenderness." That is true, not only of the Maryland court, but of this one, but it is also true that where trustees have acted in bad faith, and have fattened at the expense of their *cestui que trust,* or have endeavored so to do courts have never hesitated to hold them over the coals until all of the illgotten fat has been fried out of them, and until the wrongs they have wrought have been fully righted. No reason is shown why these trustees should not make good the loss plaintiff sustained as a result of their actions. They should be thankful that he did not endeavor to prove a larger loss and did not ask for the entire amount expended by him for attorney's fees and otherwise in ridding himself of the Johnson contract.

The judgment is reversed, with directions to award plaintiff a judgment against these trustees for $2,150.00, with interest from March 19, 1917, and $333.33 with interest from February 25, 1919.