## Pedigo v. Pedigo's Committee.

(Decided Nov. 18, 1932.)

J. WOOD VANCE, GEORGE R. BROWN, Jr., and J. H. PAYNE for appellant.

DAVID A. McCANDLESS, W. L. PORTER and J. R. WHITE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Walter T. Pedigo, was an American soldier in the World War. He carried war risk insur-

ance entitling him in certain contingencies to compensation and disability benefits payable in monthly installments, which in this case was $117.72, and which is under the administration of the United States Veterans' Bureau or Administration, as provided by the World War Veterans' Act of June, 1924, as since amended by the Congress of the United States (38 USCA sec. 421 et seq.). Under the terms of that insurance the veteran, Walter T. Pedigo, on November 6, 1919, was entitled to such monthly payments because of the happening of the conditions upon which it became due, and they were collected thereafter. On May 21, 1921, the ex-soldier was adjudged by the Barren circuit court to be permanently of unsound mind and he was committed to the Central State Hospital at Lakeland, Ky., where he has since remained.

L. C. Pedigo was at the same time appointed his committee and acted as such until November, 1924, when he voluntarily resigned, and the appellee, J. H. Mann, Jr., was appointed and qualified in his stead. The first committee settled with the court and turned over to his successor, the appellee, the funds in his hands amounting to $4,128.33, and the latter continued thereafter to collect the monthly payments under the war risk insurance policy. The monthly expense of keeping his ward in the asylum was $50 leaving $67.72 as accumulations. The administrative and guardianship features of the fund created by the original federal statute has been changed by amendments thereto and it is now administered by an agency known as "Veterans' Administration," and it will be so referred to in this opinion. At the time of his appointment as committee for Walter T. Pedigo, the appellee was cashier of the Citizens' National Bank in Glasgow, Ky., and had prior thereto purchased at a premium, 37 shares of its stock for which he owed practically three-fourths of the purchase price, and which was secured by a pledge of the stock. Upon receiving the funds of his ward from his predecessor after his appointment he immediately paid off that indebtedness with his ward's funds, but continued to hold the stock in his name.

Shortly thereafter he severed his connection with the bank, and on March 20, 1926, he purchased from W. E. Jones a dwelling house and lot on a prominent residence street in Glasgow, and took the title thereto

in his name. He paid part of the purchase price by assigning the bank stock that stood in his name to the vendor, and the balance was paid in cash from the trust funds in his hands as committee for his imbecile ward. There is and was a branch office of the Veterans' Administration in Louisville, Ky., through which the monthly payments, supra, were made. Under the federal law periodical accountings are required from a committee, trustee, or guardian for an insurance beneficiary of a like character to that of settlements required by our statute, all the latter of which appellee made, from the time of his appointment until this litigation arose. His reticence to render an account to the branch office of the Veterans' Administration at Louisville, as requested by it, was the cause of considerable correspondence between it and him, and which developed the fact that he had invested the funds of his ward in the dwelling house in Glasgow, and the administration eventually learned that the deed thereto stood in his name. It then began an effort to have him, in some manner, transfer the title so as to make his ward the beneficial owner of the property and to put it beyond the power of any creditor or innocent purchaser to acquire rights detrimental to the interest of the ward.

More than a year was consumed by the administration in prosecuting that effort, and it was so engaged on May 18, 1930, on which day appellee on behalf of himself and his ward filed an ex parte petition in the Barren circuit court in which he set forth the fact of his appointment as committee, and that there was then in his hands, as constituting the trust fund belonging to his ward, the sum of $11,469.92, and he asked the permission of the court to invest a part of it in real estate in Glasgow. By an amendment, later filed pursuant to a motion made for that purpose, he designated the particular real estate in which he desired to make the investment and which was the dwelling house and lot that he had purchased from Jones in 1926, and to which he still held title in his name. In the settlements made by him in the Barren circuit court he charged himself with 4 per cent. interest and deducted the expense of maintaining his ward in the asylum, and perhaps other minor items, leaving the above balance in his hands.

About the time the ex parte action was filed, or shortly thereafter, J. N. Pedigo, a relative of the incompetent soldier, as the latter's next friend, filed an action in the Barren circuit court against appellee, setting forth the facts we have outlined, and charging that he had converted the funds of his ward to his own use and had violated his trust and because of which he was liable on his bond for the full amount collected by him as of the date it was collected with 6 per cent. interest, and that the ward by his next friend elected to so charge him, and prayed for judgment against him on that basis for the full amount of principle and interest that might be due. The petition also asked the court to remove appellee as committee for the incompetent soldier and to appoint another in his stead. It was furthermore prayed therein that a lien be declared on the involved house and lot to secure whatever judgment might be rendered on the basis of the election made. The ex parte petition referred to was answered by the next friend and in it the same relief was asked as was done in the independent action filed by him. The cases were consolidated and the Veterans' Administration filed a pleading therein asking for practically the same relief on behalf of the incompetent soldier.

Various pleadings and motions made the issues, and, after proof taken, the Veterans' Administration also entered motion asking the court to remove appellee as committee and appoint another in his stead. Upon final submission, the court overruled the motions to remove appellee, which carried with it also the overruling of the motion to appoint another in his stead, and further adjudged that appellee execute a deed to himself as committee for his ward conveying the title to the involved house and lot at the price of $7,300, and for which amount he should be credited in his settlements, and from that judgment this appeal is prosecuted.

There seems to be but little if any dispute between learned counsel representing all parties to the litigation as to the law with reference to the power and authority of trustees in the management of the fund intrusted to their care, as well as the investments thereof, and also as to the law relating to the remedy of the cestui que trust when the trustee violates his duties and fails to comply with the law relative thereto. No principles of equity

408

are better settled than these: **(1)** A trustee or fiduciary will not be permitted to profit beyond his legal allowances out of the property intrusted to his hands, nor to invest the trust estate in a way forbidden by law, including statutory enactments in jurisdictions where they exist; **(2)** he shall not in any event invest trust funds in property taking title to himself individually, nor shall he mingle trust funds with his own and invest the commingled funds in his individual name; and **(3)**, if the trust fund is invested contrary to them, the beneficiary of the trust may elect to proceed against his trustee as for a conversion of the property and recover the amount so invested with legal interest from the time it came into the possession of the trustee, and may assert a lien upon the property in which the fund is invested if the fund can be so traced, but not to the detriment of innocent third parties.

Those principles of the law of trusts are so fundamental that it would seem to be a work of supererogation to incumber the opinion with authorities and precedents, but they may be found, so generally stated, in the text of 26 R. C. L. pages 1322, 1323, and 1325, in secs. 184 to and including 189. See, also, sec. 127 beginning on page 192, and sec. 128 beginning on page 197, of Perry on Trusts & Trustees (7th Ed.) vol. 1. See, also, the cases of Goff's Guardian v. Goff, 123 Ky. 73, 93 S. W. 625, and Gee v. Womack, 203 Ky. 718, 263 S. W. 6. In the enforcement between trustees and their beneficiaries of the rules, supra, courts and text-writers announce the practice to be, that the actions of trustees will be closely scrutinized so as to prevent and remedy departures therefrom and to see to it that they shall not be permitted to profit through the management of the trust fund to the detriment of the cestui que trust, and to remedy departures therefrom, by granting appropriate relief on proper application. There are other rules looking to the just administration of the trust which are for the protection of the trustee as well as the cestui que trust, such as that the trustee will not be charged as income from the trust estate, with an amount beyond which he, as a reasonably prudent business man acting in good faith, could have realized under the circumstances, but that, in any event, under our statute he shall be charged with as much as 4 per cent.

and as much more as he actually realized from such investments as were made. Also, as we have seen, that, if he converts the property to his own use by making investments and taking title to himself individually, then he is charged with legal interest on the amount so invested. In pursuing the latter course, the action of the trustee is tantamount to borrowing the amount of the investment for himself individually from himself as trustee and he should be accountable for the legal rate of interest as in case of any other borrower. A great many sustaining domestic cases will be found in the opinions, supra, to which might be added the one of Richardson's Adm'rs v. Spencer, 18 B. Mon. 450.

It is conceded in brief of learned counsel for appellee that their client was guilty of what they deem a "technical" conversion of his ward's funds in this case, but they insist that the testimony shows he acted in good faith and that he should now be permitted to credit his account as trustee with the value of the real estate involved, and which they say the evidence shows is not less than the $7,300 that the court found in this case. They also contend, as they did in the court below, that the insistence made in the letters from the Kentucky branch of the Veterans' Administration to appellee that he should arrange the title to the real estate so as to make his ward the beneficial owner thereof instead of himself, was an election on its part to accept the property on behalf of the ward at its market value, and that by reason thereof the ward as well as his next friend (or a succeeding committee if one were appointed) are estopped to deny the right of appellee to so settle his account. But that argument fails to impress us for the all-sufficient reasons (a) that the requests so made by the branch office of the Veterans' Administration were for salvaging purposes and were not done in an effort to accomplish a final settlement of appellee's accounts, but only in furtherance of its supervisory authority under the federal statute to guard the interest of the soldier beneficiary and to protect it as much as possible until the proper court settlement could be made, and (b) that, if it were otherwise, then the federal statute creating the veterans' bureau vested it with no such authority.

Section 21, subsection (1) of that statute (38 USCA sec. 450) authorized payments due under the War Risk

Insurance Act to be made to the committee ·of an ·incompetent, and subsection (2) of the same section vests the director of the Veterans' Administration, or a deputy director, with power and authority ''to appear in the court which has appointed such fiduciary and make proper presentation of such matters to the court.'' Other portions of the statute vest the same officers with supervising authority over the fiduciary to ascertain whether or not he is proceeding according to law, and to take such legal steps as may be necessary to protect the interests of the ward. No effort is made anywhere in the federal statutes to confer upon the bureau or any officer thereunder judicial power and authority to enforce by its own decree any of its suggestions. On the contrary, the inserted excerpt therefrom specifically requires that application must be made to the proper local court for such enforcement. It is, therefore, clear that this contention made by learned counsel for appellee is without merit.

The authorities cited in support thereof are to the effect that, when a cestui que trust possessing no legal disability and with full knowledge of his rights makes an election of remedies against his trustee, he is bound thereby, but that doctrine is entirely inapplicable here. If, however, the Veterans' Administration officers had possessed the power to make the election for the incompetent in this case, the mere request, supra, that was made of appellee looking to the preservation of the rights of the ward and to ·their impairment by the acquisition of rights by innocent third parties, did not progress to the point of creating an estoppel since no alteration of appellee's position resulted therefrom. We, therefore, conclude that the estoppel relied on is not available.

It is likewise argued by the same counsel that the evidence in the case amply sustains the finding of the chancellor that the involved house and lot is worth the amount of the credit that he allowed, $7,300, whilst counsel for appellee contends to the contrary. We have carefully read the evidence on that issue and find ourselves unable to agree with counsel for appellee.· It is true that some of the witnesses introduced in his behalf sustained that finding, but a greater number, and whom the record shows, as we conclude, are better qualified to express an opinion upon the subject, fixed the amount

at between $5,000 and $5,500, and, if the case depended upon the determination of that issue, we would feel compelled to accept their testimony. But, under our conclusions, as hereinbefore expressed, that issue becomes unimportant, since by these proceedings the ward, through his proper representative, has elected to not accept the property at any price, but to proceed as in case of conversion, and to recover of appellee the amount of the trust estate so invested in his name with legal interest thereon from the time the investments were made, and to assert a lien upon the property in which the fund was invested, and it is our conclusion that such an election is available to the cestui, regardless of the value of the property in which the fund is invested.

Section 2149 of our present statutes authorizes the court that appoints a committee for an incompetent person to remove him for cause and there can be no doubt that the record in this case presents sufficient grounds, as hereinbefore pointed out, to remove appellee as committee for his ward, and from which it results that the court also erred in overruling the motions made for that purpose, and to follow that action by the appointment of another committee with directions to make settlement with appellee in accordance with the principles herein outlined, or to so settle his accounts in the Barren circuit court which appointed him.

On motion of the two local counsel of appellee there was allowed to each of them a fee of $150 which he was directed to pay out of the estate and to take credit therefor in his future settlements. Appellant objected to that allowance, as well as to the authorizing of appellee to take credit thereby. The attorneys to whom the allowances were made are not made parties to this appeal, and, so far as they are concerned, we are without authority, under numerous cases from this court, to interfere with that judgment in so far as it affects them. But appellee is a party to the appeal and the entire judgment rendered by the trial court in his favor, including his right to take credit by the amount of the allowed fees, is involved as well as the right to such credit as between himself and appellant. The record discloses flagrant violations of duty by appellee as committee for his ward, some of which boldly appear from what has hereinbefore been stated. His

defense in. this case was not in the interest of the estate of which he was trustee. On the contrary, it was and is an effort on his behalf to shield and protect himself from his derelictions above pointed out, and we know of no principle of law or equity that would allow him to take credit by the amount of his attorneys' fees incurred in such a defense any more than to take credit by any other item of costs incurred by him in making his defense. He was forewarned of the motions to remove him by notices duly served, or by being present when made, and, under the facts as disclosed by the record, he had no legitimate defense thereto; and the same is true with reference to the accounting that he should have made, and which was as we have herein adjudged. Therefore, while we may not reverse that part of the judgment making the allowance to the attorneys and for its payment out of the trust fund in so far as they are concerned, yet in so far as it operates to the benefit of appellee and to the detriment of the estate of his ward, we may do so, and which we conclude should be done, and that he should account for that amount to his ward.

Wherefore, the judgment is reversed, with directions to sustain the motions to remove appellee as committee for his ward, and to require a settlement and a final accounting by him in accordance with the principles of this opinion.