# Bryan et al. v. Security Trust Co.

Dec. 3, 1943.

Frank S. Ginocchio and S. S. Yantis for appellants.

Hunt, Bush & Lisle for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing in part and affirming in part.

The appellee, Security Trust Company, became the testamentary trustee of the estate of John W. Berkley in the year 1903. The beneficiaries have prosecuted this suit against it charging mismanagement through self-dealing, the making of secret profits, and illegal and imprudent investments resulting in the loss of a portion of the estate. They have sought to recover indemnity, the commissions collected by the trustee throughout the years of service, and the expenses incurred in employing attorneys in this litigation. They also prayed that the defendant be removed as trustee. The trustee promptly resigned because of the friction and an individual was named in its place. Several claims have gone out of the case. We need to refer to and consider only three items,

ignoring two, aggregating $39.20, under the rule of de minimis non curat lex.

The principal question before us is whether the Trust Company is liable for an apparent loss resulting from investment in preferred and convertible stock of the Lexington Roller Mills Company. In April, 1919, that corporation issued 1,500 shares of $100 par value of 6% preferred stock, convertible at the option of the holders into first mortgage bonds. The Security Trust Company and the Fayette National Bank were joint underwriters of the issue, each taking 750 shares, to be disposed of for a commission of $5 a share. A few months later the Security Trust Company acquired the shares taken by the bank at a price of $98.50 immediately before the payment of a dividend of $1.50, thereby making the real cost $97 a share. It sold the stock to the public and invested some of the funds of several trust estates in it. None was directly placed in the Berkley trust, but eventually $6,400 of its funds were invested in the stock. The first investment was on January 25, 1922. The record is not clear whether at that time ten shares were purchased from the owner for $900 by the Trust Company in its own right and then sold to the trust, or were purchased directly for the trust. On January 28, 1924, the trustee transferred fifty shares from a guardian's account to the Berkley trust at the price of $5,000. On January 18, 1929, it transferred four shares at a cost of $400 from another trust estate, and on July 28, 1930, purchased one share for $100 from itself as an agent of a certain individual.

From the beginning the Security Trust Company had been the transfer agent of the corporation for this issue of stock and also trustee under a trust deed or mortgage securing the bonds into which the stock was convertible. One of the directors of the Trust Company was the president of the Roller Mills Company. In May, 1931, when it appeared that the Roller Mills Company was in some financial difficulty, the Trust Company had the sixty-five shares of stock held in the Berkley trust converted into $6500 of the bonds. In 1936 the Lexington Roller Mills Company sought relief through reorganization under Sections 77A, 77B, of the Bankruptcy Act, 11 U. S. C. A. secs. 206, 207. The United States District Court ruled that these bonds were subordinate to unsecured claims in accordance with In re Phoenix Hotel

Co. of Lexington, Kentucky, 6 Cir., 83 F. (2d) 724. The Hotel Company had issued convertible stock of the same kind. In the end the Berkley trust received second mortgage bonds of a Delaware corporation organized to take over the property of the bankrupt Kentucky corporation. The amount was for the principal and accrued interest on the investment aggregating $7,865. No income had been received from the original investment since 1935, and no coupons on the new bonds have ever been paid. It seems to be quite agreed that they are of little or no value. It is certain that they do not constitute a class of investment authorized by the statute, KRS 386.020, or by the rule of prudent investment.

The decision as to the trustee's liability to the beneficiaries seems to involve two questions: (1) Was the transaction so tainted with self-dealing and personal interest of a character that requires a judgment of recission or repudiation ab initio? (2) If not, were the original investments imprudent and unauthorized? The duties of a trustee to which the two questions point are different in degree. Of course, liability for loss is commensurate with and to be determined by the trustee's failure to recognize and perform them singly or jointly.

1. The first duty is with respect to the relationship existing between the trustee and the beneficiary. This duty is, in effect, that of uberrima fides, or utmost fidelity. As trenchantly stated by the distinguished jurist, Chief Judge Cardozo, in Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, 546, 62 A. L. R. 1: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

The duty has been defined and described in many ways. It is well expressed in 26 Bogert, Trusts and Trustees, sec. 543, as follows: "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of the welfare of third persons. This duty grows out of the fact that the trustee is a representative and out of the well-known inability of human beings to serve two mas-

ters at once or to act satisfactorily when faced with conflicting interests."

Illustrative of a breach of such duty, or an example of disloyalty, is for the trustee to sell his own property to the trust estate. The fairness of the transaction is not relevant. In such a case the beneficiary may elect to repudiate the deal and require the trustee to restore the purchase price or hold him liable for the amount of the investment, with interest, or recover whatever profit he may have made in the transaction. Restatement of the Law of Trusts, Section 170; 26 Bogert, Trusts and Trustees, sec. 543; Perry on Trusts, Sections 427, 429 and 708; Scott on Trusts, Sections 170, 205, 206; Clay v. Thomas, 178 Ky. 199, 198 S. W. 762; Bolling v. Ford, 213 Ky. 403, 281 S. W. 178; Pedigo v. Pedigo's Committee, 247 Ky. 403, 57 S. W. (2d) 54; First State Bank of Pineville v. Catron, 268 Ky. 513, 105 S. W. (2d) 162. This rule is sufficiently broad to embrace transactions with trust funds resulting in indirect profit to the trustee, such as commissions or compensation as brokers or bankers or for other professional or business services. Perry, Section 432. Our statutes require a fiduciary to account for all interest or profit received. KRS 386.020.

This leads us to the direct question of whether the investment by a common trustee of funds of one trust in the purchase of securities in another trust is within the rule. It is the appellants' contention that the initial investment of funds of the several other trust estates in the stock of the Lexington Roller Mills Company was a violation of the demand of undivided loyalty which forbids a trustee dealing with himself and because of its relationship and the profit inuring to it as the underwriter of one-half of the issue and the seller of the other half after buying it from its associate. Cf. First Nat. Bank of St. Petersburg v. Solomon, 5 Cir., 63 F. (2d) 900. It is further argued that the vice was carried through into the transfer from those estates into the Berkley trust.

There can be no question, as we have already indicated, that a trustee must refrain from creating situations where his own interests are brought into conflict with those of the trust and from doing anything which would tend to interfere with the exercise of a wholly disinterested and independent judgment. This is because self-interest is a touchstone by which almost every

motive and the fairness of every transaction involving another man's property can be tested. If the motive was wrong, it ordinarily follows the transaction was not a free one. It appears that the Uniform Trusts Act, sec. 6, which has been adopted in a few states but not in Kentucky, provides that "No trustee shall as trustee of one trust sell property to itself as trustee of another trust." It is held in Ohio, where there is no statute prohibiting such transaction, that since the handling of multiple trusts calls for a high degree of care and a sense of extreme loyalty upon the part of a trustee as to each of his various trusts, the transfer of investments from one to another is in effect self-dealing and against the policy of the law. In re Binder's Estate, 137 Ohio St. 26, 27 N. E. (2d) 939, 955, 129 A. L. R. 130. The facts in that portion of the case in which the holding is declared are quite like those of the instant case. Certain securities owned by the trustee were first sold to one trust estate and some years later were transferred to the Binder estate. The opinion recognizes that the decision is against the weight of authority, but the court reasoned: "If a trust-to-trust sale of a fraud-infected or breach-of-trust-infected security, made so by a sale to the first trust, exonerates the trustee or removes his guilt as to the second sale, the law against self-dealing is defeated. Such a rule would allow a trustee openly to sell his own property to one of his trusts and escape the consequences of his breach of trust by selling or transferring the property at the same price to another of his trusts. No beneficiary would have occasion to complain as to the original transaction, and no beneficiary could complain as to the second."

The rule was followed in the late case of In re Trusteeship of Stone, 138 Ohio St. 293, 34 N. E. (2d) 755, 134 A. L. R. 1306, in which it was expressly held, as stated in the syllabus: "If a security sold by a trustee to one of its trusts is infected by a breach of trust at its inception, the vice is not cured by the later sale and transfer of such security to another trust under the control of the trustee, even though the trust-to-trust transaction, in itself, was fair to both trusts."

The weight of authority is that in the absence of a controlling statute, the trustee of several estates may legally transfer securities from one trust to another by purchase and sale provided the trustee is not personally

interested and the terms of the transaction are fair to both trusts. Scott on Trusts, Section 170.16; French v. Hall, 198 Mass. 147, 84 N. E. 438, 16 L. R. A., N. S., 205; First Nat. Bank v. Basham, 238 Ala. 500, 191 So. 873, 125 A. L. R. 656; In re Saeger's Estate, 340 Pa. 73, 16 A. (2d) 19, 131 A. L. R. 1152; Roberts v. Michigan Trust Co., 273 Mich. 91, 262 N. W. 744; Annotations, 129 A. L. R. 150. The eminent lawyers composing the American Law Institute in preparing the Restatement of the Law of Trusts, after stating the general duty of a trustee to the beneficiary to be to administer the trust solely in the interest of the beneficiary and to deal with him fairly, Section 170, made the following comment in paragraph "q" as to the duty of a trustee of separate trusts: "Where the trustee is trustee of two trusts if he enters into a transaction involving dealing between the two trusts, he must justify the transaction as being fair to each trust. If the circumstances are such that the interests of the beneficiaries of the different trusts are so conflicting that the trustee cannot deal fairly with respect to both trusts, he cannot properly act without applying to the court for instructions."

It seems to us that the rigorous rule of absolute prohibition of the trust-to-trust transactions, irrespective of the particular circumstances, as laid down by the Ohio Supreme Court in the cases cited above and perhaps by other courts less explicitly or directly, is not required in the application of the principle of loyalty. Some of the largest and strongest financial institutions of the country have become such because of their satisfactory trusteeship of many estates. It appears to be a common practice and one generally recognized among the most honorable of financiers as proper and legitimate. So far as it is reflected in the opinions of the courts of the country the practice has seldom resulted in harm. However, as is pointed out in the Binder Estate case, supra, the practice affords an opportunity for a trustee to circumvent the law against self-dealing and permits him to escape the consequences of a breach of duty. The suggestion may be added that such a transaction also provides an opportunity for a trustee of multiple trusts to favor one estate to the detriment of another by transferring questionable securities without the knowledge of the beneficiary of the latter. Consider the annotation: "Liability of trust estate for funds diverted from another trust by the common trustee." 25

A. L. R. 1480. Because self-interest may be lurking in a transaction even if it be not exposed, the transfer should be the subject of careful scrutiny. If questioned, the burden rests upon the trustee to lay the whole matter open and justify the transaction as being fair to every trust, as is declared to be the law in the Restatement of the Law of Trusts, supra; First Nat. Bank v. Basham, supra.

We have not overlooked the contentions of the appellants that the alleged impropriety of selling the stock initially to other trust estates should be carried into the investment of the Binder trust, and that the alleged original vice requires the court to order a recission on that account. We do not think there is any right on the part of these beneficiaries to question the investment in other trusts. They are concerned only with their own. It would be otherwise if there were circumstances inducing a belief that the transfer had been made in bad faith or to avoid the consequences.

2. The plaintiffs unsuccessfully sought to have the court place the burden of proof upon the trustee. It cannot be supposed that a beneficiary by merely bringing a suit can place the burden and expense upon his trustee to render an accounting without justification for the action. The plaintiff must produce some evidence to indicate that there has probably been an improper handling of the estate or a failure to make a full accounting. When that is done, it then devolves upon the trustee to make a complete disclosure and to establish that a true accounting has been rendered or to make it then and there. Fidelity & Deposit Co. v. Husbands, 174 Ky. 200, 192 S. W. 51; Burton v. Clere, 271 Ky. 411, 112 S. W. (2d) 57; 65 C. J. 904, 937. In the instant case the plaintiffs took the deposition of C. N. Manning, the president of the defendant trustee, as on cross-examination, and developed the foregoing transactions from his testimony and the records he produced under order of court. It seems to us that the evidence was amply sufficient under the rule above outlined to shift the burden to the trustee to justify the situation and transaction, to prove that its actions had conformed to every standard of duty, and to establish not only the fair dealing but the proper degree of prudence and care in making the investments. The plaintiffs continued their examination of the president of the Trust Company with respect to the character of the investments on the several dates stated.

104

3. There was a provision in the mortgage deed of trust executed by the Roller Mills Company to the Security Trust Company as trustee of the stock and the bonds that beginning April 1, 1919, the mortgagor would pay the trustee $6,000 annually to create a sinking fund for the protection of the stock and bonds. No money was ever paid into this sinking fund. The Trust Company, through its president but never by its board of directors, waived the provision because he was informed that the Roller Mills Company was improving and adding to its property and machinery and enhancing the value of the mortgaged property beyond the amount of the annual sinking fund requirements. It is shown that when the first investment was made in 1922 the deficit in the sinking fund was $18,000; when the largest investment was made in 1924 it was $30,000; and when the last one was made in 1930 it was $72,000. Doubtless no investor but the trustee knew that throughout these twelve years the Roller Mills Company had not paid anything into the sinking fund. When the bankruptcy came in 1936, had the terms of the mortgage securing these bonds been met the amount would have been $108,000. There is other evidence tending to show the insecurity of the investment. In July, 1930, when the last funds of the trust were put in this stock, the Roller Mills Company owed about $144,000 unsecured debts, of which the Trust Company had knowledge. But Mr. Manning testified that he knew it then had sufficient assets, although not liquid, to cover the indebtedness. In May, 1931, the company had encountered financial difficulties which then resulted in a creditors' agreement, to which the Trust Company as a general creditor was a party. It was about this time that it converted the Berkley stock into bonds.

Mr. Manning testified that the stock was never extensively traded in "but it was thought to be a safe, prudent and profitable investment." He had been advised by competent counsel that bonds of this character were superior to general claims. As stated, the United States Circuit Court of Appeals ruled otherwise. That is all the evidence tending to prove the performance of the trustee's duties. The defendant's counsel interposed many objections along the way to questions tending to have the witness reveal the method of accounting and other things connected with the management of the trust and the security of the investment, thus hindering the plaintiffs in their efforts to obtain a full disclosure.

Many of these inquiries, we think, were relevant and competent, but it is not necessary to discuss them in detail.

The true rule as to the duties of a trustee with respect to investing funds and otherwise handling the estate is thus clearly stated in the Restatement of the Law of Trusts, Section 174: "The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has."

Of particular pertinence is the following statement of this court in Germania Safety Vault & Trust Co. v. Driskill, 66 S. W. 610, 612, 23 Ky. Law Rep. 2050: "The trust company has caused to be conferred upon it the privilege of acting in these trust capacities. It must necessarily assume all the liabilities and duties belonging to such an office. Necessarily it acts only through its official boards. It must be held to contract with all intrusting to it such business that it will select men of prudence, judgment, honesty, and reasonable skill in these places, and that they shall bring to the discharge of their duties to these estates not only their skill, but that *whatever knowledge they may have, wherever or whenever obtained, will be used to protect these interests* exactly as if they were acting personally as such administrators or trustees." (Emphasis added.)

See, also, People's State Bank & Trust Co. v. Wade, 269 Ky. 89, 106 S. W. (2d) 74, for a particularized statement of duty and the factors to be considered by a trustee in making of investments, and Hilton's Adm'x v. Potter-Matlock Trust Co., 230 Ky. 401, 19 S. W. (2d) 1088, respecting special diligence of a company professing superior ability in handling trust estates.

Judicial notice is taken of the fact that late in 1929 there occurred a great collapse of values of all classes of property and that the depression then commenced progressively became greater. Burton v. Burton's Committee, 262 Ky. 499, 90 S. W. (2d) 687. Liability of a trustee is not to be gauged by hind-sight nor by the mere fact of a loss to the estate. Peoples State Bank & Trust Co. v. Wade, supra. On the other hand, the wisdom or propriety of an investment cannot be determined by the

fact that dividends or income was received either before or afterward as in the present case; nor is mere good faith a house of refuge from responsibility for a loss. Robertson v. Robertson's Trustee, 130 Ky. 293, 113 S. W. 138, 132 Am. St. Rep. 368. There is much more in this record to establish the liability of the trustee for the loss resulting from the investment in the stock of the Lexington Roller Mills Company. There stands out most prominently the fact of the failure of the company by and with the agreement of the trustee to protect the shareholders and bondholders, who had the right to expect those terms would be met and which, if they had been met, would probably have saved a considerable part of the securities. The company was in a shaky financial condition. It developed publicly only a few months after the last investment was made. The Trust Company cannot rely upon the general reputation of the solvency of the corporation or the worth of its securities as a good investment because it had the means at hand coupled with the duty to ascertain its actual value. Germania Safety Vault & Trust Co. v. Driskell, supra. The president of that company was a director in the Trust Company. There are other circumstances which placed the burden upon this trustee to establish quite definitely the fact that it did not know of that condition, and it did not meet that obligation. The responsibility is magnified by a failure to dispose of the investment when it became apparent that even if originally a proper one it had become or was fast becoming improper. Scott, Sec. 231.

The delicacy of the situation existing between the Trust Company and the Roller Mills Company with respect to the stock and bonds and between the Trust Company and the beneficiaries of the trust, arising from the fact of the "trust-to-trust" transfers of the securities, required a closer scrutiny and greater assurance of safety and propriety than in the ordinary case.

We are of opinion, therefore, that the court should have adjudged the right of the beneficiaries and successor trustee to repudiate these transactions and have rendered judgment for the respective amounts with interest (Scott, Sec. 207), subject to credits for sums received by the estate in dividends. It would, of course, follow that the bonds of the new corporation should be transferred to the Trust Company as its individual property.

4. The court adjudged that the beneficiaries and

successor trustee were not entitled to recover any commissions collected by the Security Trust Company as trustee during the 42 years of its service. Want of fidelity in the administration of a trust forfeits the trustee's right to compensation. This embraces dishonesty, negligence or wilful or gross misconduct. Comingor v. Louisville Trust Co., 128 Ky. 697, 108 S. W. 950, 111 S. W. 681, 129 Am. St. Rep. 322. A trustee's commissions were ordered withheld until he should restore to the corpus of the estate a loss resulting from the violation of the statute expressly declaring that trust funds should not be invested in bonds of a railroad company under certain conditions. Aydelott v. Breeding, 111 Ky. 847, 63 S. W. 916. We have held a testamentary trustee was not entitled to compensation because of gross negligence in keeping accounts, Ward v. Shire, 65 S. W. 8, 23 Ky. Law Rep. 1279, and for commingling trust property with his own. Weakley v. Meriwether, 156 Ky. 304, 160 S. W. 1054. Whatever commissions were received in the Phoenix Hotel Company and the Lexington Roller Mills Company transactions are, of course, embraced in the repudiation and the refund made and to be made of the principal with interest. There is no substantial basis for denying compensation or requiring a refund of commissions paid throughout the years for other services. The rule of forfeiture of compensation cannot in justice and equity be extended any further than to apply it to the two items described.

The beneficiaries employed counsel upon a contingent fee basis to prosecute this suit against the trustee and paid them accordingly for the recovery heretofore made by them in the sum of $2,273.64. They claim the right to recover that sum and an additional fee to be paid their counsel upon the theory that they were damaged to that extent by the acts of the trustee. The appellants rely upon a statement in Comingor v. Louisville Trust Co., supra, that a trustee guilty of negligence in handling an estate is liable for losses, deficiencies or injuries occasioned thereby. The statement should not be construed as converting a suit in equity for a proper accounting by a trustee to an action at law for damages. Nor does Bolling v. Ford, 213 Ky. 403, 281 S. W. 178, support the appellants' position. In that case property had been placed in the hands of trustees for sale and they were guilty of gross fraud in obtaining the property for themselves. It was necessary for the owner to prosecute an

action to avoid the transaction in order to save himself. In a subsequent suit against the trustees for damages, it was held the expenses incurred, including a fee paid an attorney for services rendered in the first suit, were proper elements of damage to be recovered of the defendants. The case was not one for an accounting against a trustee as in this one, and it is inapplicable. In Farris v. Bingham, 164 Ky. 444, 175 S. W. 649, we held that the allowance of an attorney's fee to the plaintiff to be taxed as an item of cost against the defendants in a suit to surcharge a guardian's settlement was unauthorized. That case is applicable here.

The object of a judgment against a trustee for breach of duty is not to penalize or punish him for a reprehensible act, but to make the plaintiff whole and place him in the position in which he would have been if the defendant had performed his duty, and not one in which he might have been if the trustee had carried out the trust. 26 Bogert, Trusts and Trustees, sec. 703. In an action for a wrong, ex contractu or ex delicto, the plaintiff's attorney's fee is never regarded as part of his damage, although it is obvious that any recovery is reduced by that and perhaps other expenses. It is the policy of the law in this jurisdiction not to allow an attorney's fee to be collected from an adverse party in the absence of an express statute authorizing it. There is none covering the case of this character. The judgment in this respect was, therefore, proper.

The judgment is reversed to the extent that it denied appellants a recission of the Lexington Roller Mills Company transaction, with consequent accounting as stated. It is affirmed in other respects.