Jeanine **WIGGINS**, Diana Dickey, Allison Dickey–Bartholomew, and All Other Descendants, Per Stirpes of Carrie F. Schlegel Appellants,

v.

**PNC BANK, KENTUCKY, INC.,**
**as Trustee, Appellee.**

No. 1996–CA–002444–MR.

Court of Appeals of Kentucky.

July 2, 1998.

Case Ordered Published by
Supreme Court Feb. 10, 1999.

R. Thomas Blackburn, Jr., Louisville, KY, for Appellants.

Scott D. Spiegel, Petersen S. Thomas, Louisville, KY, for Appellee.

Before BUCKINGHAM, KNOX, and MILLER, Judges.

## *OPINION*

BUCKINGHAM, Judge.

Appellants, Jeanine Wiggins, Diana Dickey, Allison Dickey–Bartholomew, and all other descendants, per stirpes of Carrie F. Schlegel (the descendants), appeal from an opinion and order of the Jefferson Circuit Court which granted summary judgment in favor of PNC Bank, Kentucky, Inc., as Trustee (PNC). The descendants also appeal from the trial court's denial of their motion to set aside or vacate the opinion and order. Having considered the record, the arguments of counsel, and the applicable law, we reverse and remand.

Carrie F. Schlegel died in 1936 and left a will which provided for the creation of a trust (the Schlegel Trust) for which her daughter, Verna Schlegel Moesser (Verna), was the life income beneficiary. Mrs. Schlegel's will also provided that upon the death of Verna, the trust would cease and the remaining principal would pass to Verna's descendants, per stirpes. If Verna died without leaving any surviving descendants, the descendants of Mrs. Schlegel (her two sons, George Schlegel and Leland Schlegel) would receive the remaining principal. If George or Leland predeceased Verna, then George's or Leland's descendants were to take his respective share of the trust balance per stirpes. Mrs. Schlegel named Fidelity and Columbia Trust Company, a predecessor of PNC, as trustee of the Schlegel trust. The will also provided that if at any time during the duration of the

Schlegel trust "it is necessary or advisable to use some portion of the principal ... for the maintenance, welfare, comfortor [sic], happiness" of Verna, then the trustee is authorized "to use so much of the principal of said trust fund as it, in its discretion deems necessary or advisable to be used to mett [sic] such condition or situation." Mrs. Schlegel's will also provided that "[m]y trustee [is] not to be liable for the exercise of such Discretion."

Verna married and became Verna Schlegel Moesser. In 1983, Verna created an inter vivos trust (the Moesser trust) for her benefit. The Moesser trust provided that the income from that trust was to be paid to Verna for her life and also that such portions of the principal as she directed in writing were to be paid to her. The named trustee of the Moesser trust was Citizens Fidelity Bank and Trust Company, also a predecessor of PNC. Upon Verna's death, the Moesser trust was to terminate and the assets contained therein were to be transferred to Verna's personal representative.

In 1985, Verna appointed H. Thomas Bailey (Bailey) as her attorney-in-fact. Bailey is variously described in the record as being Verna's foster son, stepson, or nephew by marriage. Mr. Bailey apparently helped take care of Verna until she entered a nursing home in 1986. Initially, encroachments were made from the principal of the Moesser trust to pay for Verna's care in the nursing home. In 1990, however, PNC suggested to Bailey that PNC's encroachment committee might consider allowing encroachments from the principal of the Schlegel trust as well as encroachments from the Moesser trust for Verna's care.

Bailey sent a letter to PNC in January 1990 stating that Verna's monthly living expenses totaled $5,516 per month. PNC's encroachment committee then approved a $2,000 per month principal encroachment from the Schlegel trust for 1990. In 1991, Verna's condition worsened, and Bailey's estimation of her monthly living expenses rose to $8,047 per month. PNC's encroachment committee then approved a monthly principal encroachment of $6,400 from the Schlegel trust. Encroachments in that amount were taken from the principal of the Schlegel trust

each month in 1991 and again in January of 1992.

Verna died in January 1992 leaving no issue. The Schlegel trust ceased, and the remaining principal passed to the descendants who were entitled to the corpus of the Schlegel trust upon Verna's death under the provisions of Mrs. Schlegel's will.

Once the descendants determined that $107,200 of the principal of the Schlegel trust had been invaded by PNC, suit was filed against PNC alleging that it breached its fiduciary duty by encroaching on the principal of the Schlegel trust. Both the descendants and PNC filed motions for summary judgment, after which the trial court granted summary judgment to PNC. The descendants appeal from that order granting summary judgment and from the order denying their motion to set aside or vacate that order.

The descendants argue that PNC had a conflict of interest in serving as trustee of both the Schlegel trust and the Moesser trust and in invading the principal of the Schlegel trust to the detriment of its remainder beneficiaries. They contend that due to the conflict of interest, Kentucky Revised Statute (KRS) 386.820 required PNC to give notice to the beneficiaries and not to exercise encroachment of the principal of the Schlegel trust without prior court approval. KRS 386.820(2) provides:

> If the duty of the trustee and his individual interest or his interest as trustee of another trust, conflict in the exercise of a trust power, the power may be exercised only by court authorization (except as provided in KRS 386.810, subsections (3)(a), (d), (f), (r), and (x) upon petition of the trustee. Under this section, personal profit or advantage to an affiliated or subsidiary company or association is personal profit to any corporate trustee.

■ In granting PNC's summary judgment motion, the trial court stated that there was no conflict of interest based upon PNC's serving as trustee of both the Schlegel trust and the Moesser trust. The trial court stated that "PNC simply had to deal impartially with the trust parties." The descendants argue that the trial court erred and that a

conflict of interest arose for PNC the moment it became trustee of both trusts. However, the descendants cite no authority in support of that contention, and we fail to see how merely managing two trusts involving the same life income beneficiary but different remainder interests is a conflict of interest per se.

■ The question remains, however, as to whether a conflict of interest was created when PNC decided to invade the corpus of the Schlegel trust without first using the entirety of the Moesser trust. The invasion of the principal of the Schlegel trust was necessarily a detriment to the descendants (the remainder beneficiaries of the Schlegel trust) while inuring to the benefit of the remainder beneficiary (Bailey) of the Moesser trust. The trial court did not address whether PNC's encroachment on the Schlegel trust created a conflict of interest.

Unfortunately, there is no authority interpreting KRS 386.820(2). The descendants cite a Maine case, *Estate of Zoa J. Spear*, 689 A.2d 590 (1997), which interprets a statute similar to KRS 386.820(2). However, that case is factually distinguishable from the case sub judice in that the Maine case involves a trustee who purchased real estate parcels in his individual capacity from the trust corpus. Therefore, the case sub judice is one of first impression.

■ Generally, a trustee owes the duty of "uberrima fides, or utmost fidelity" to the beneficiaries of a trust. *Bryan v. Security Trust Co.*, 296 Ky. 95, 99, 176 S.W.2d 104, 107 (1943). According to *Black's Law Dictionary* 299 (6th ed.1990), a conflict of interest exists in "[a] situation in which regard for one duty tends to lead to disregard of another." Such a situation presented itself to PNC when it was faced with the choice of whether to invade the corpus of the Schlegel trust, since either the remainder beneficiaries of that trust or the remainder beneficiaries of the Moesser trust would have their interests affected by PNC's decision. The action taken by PNC to invade the corpus of

the Schlegel trust had significant financial consequences for the remainder beneficiaries of both the Schlegel trust and the Moesser trust and presented a clear conflict of interest for PNC as it could not act with "utmost fidelity" toward the remainder beneficiaries of both trusts. Court authorization pursuant to KRS 386.820(2) was required before the power of encroachment could be exercised.

■ PNC argues that KRS 386.820(2) is not applicable to the Schlegel trust based upon KRS 386.835. As originally written, KRS 386.835 provided that "[e]xcept as specifically provided in the trust, the provisions of KRS 386.805 to 386.840 apply to any trust established after June 19, 1976." However, KRS 386.835 was amended in 1990 to read as follows: "[e]xcept as specifically provided in the trust, the provisions of KRS 386.805 to 386.840 shall apply to any trust." PNC argues that KRS 386.820(2) is inapplicable in the case sub judice since the Schlegel trust was created well before 1976 and since encroachments on the principal of that trust had begun before the effective date of the 1990 amendment to KRS 386.835. The descendants did not respond to this argument by PNC, and the trial court did not address it in its opinion and order. We interpret the statute as amended to be an express declaration by the legislature that the statute applies to all trusts, regardless of when they were created, since the amendment abolished the language exempting trusts created prior to 1976 from the statute's purview.[1]

PNC also argues that it had the discretion to invade the Schlegel trust for Verna's benefit and that the trial court correctly held that it did not abuse that discretion. While PNC had discretion under Mrs. Schlegel's will to invade the principal of the Schlegel trust for Verna's benefit, such power was restricted by the terms of KRS 386.820(2) which allows a trust power to be exercised only with court approval where the duty of the trustee conflicts with the exercise of the trust power. Such is the situation in the case sub judice.

---

1. We understand that there were several encroachments on the principal of the Schlegel trust before the statutory amendment became effective in 1990. Nevertheless, we conclude

that PNC had a conflict of interest when it made the encroachments, even if the conflict did not require it to seek court approval at that time.

The descendants request this court to determine that summary judgment should have been awarded in their favor and that damages should have been awarded in the amount of the encroachment from the Schlegel trust ($107,200 plus applicable interest) as well as any profits made by PNC through its administration of the Schlegel and Moesser trusts. We agree with the descendants that summary judgment should have been awarded to them due to the failure of PNC to get court authorization pursuant to KRS 386.820(2). As for the damages to be awarded, the court in *Bryan, supra,* stated:

> The object of a judgment against a trustee for breach of duty is not to penalize or punish him for a reprehensible act, but to make the plaintiff whole and place him in the position in which he would have been if the defendant had performed his duty, and not one in which he might have been if the trustee had carried out the trust.

*Id.,* 296 Ky. at 108, 176 S.W.2d at 112. We cannot conclude as a matter of law that the descendants' damages amounted to $107,200. This issue is best left for determination by a jury.

The judgment of the Jefferson Circuit Court is reversed, and this case is remanded to the trial court with instructions to enter a summary judgment in favor of the descendants and against PNC and for a trial on the issue of damages.

MILLER, Judge, concurs.

KNOX, Judge, dissents and files a separate opinion.

KNOX, Judge, dissenting.

I respectfully dissent. I do not believe a conflict of interest, as that term is used in KRS 386.820(2), was created when the trustee in this case, PNC Bank, made the decision to invade the corpus of the Schlegel trust. The Schlegel trust authorized PNC "to use so much of the principal of said trust fund as it, in its discretion deems necessary or advisable to be used" for the "maintenance, welfare, comfort, happiness" of Verna. This Court should be hesitant to restrict PNC in the exercise of its discretion absent bad faith or arbitrary conduct:

> The trustee's authority to invade the corpus is defined by the terms "comfort, welfare and happiness." These are very broad terms and indicate the extent of discretion given to the trustee. In O'Bryan v. England, 173 Ky. 12, 189 S.W. 1126, 1129, the trustee was authorized to invade the corpus whenever he deemed it necessary for the " 'support and maintenance' " of the beneficiary.... We said in that case that "It would be difficult to frame in any language a more absolute and unrestrained power and authority" in a trustee. The trustee's authority in the instant case is much broader.
>
> [T]he powers of the trustee are plenary, and where such broad powers exist the court will not restrict the trustee in the exercise of his discretion unless it appears that he is guilty of bad faith or is acting in an arbitrary manner.

*Combs v. Carey's Trustee,* Ky., 287 S.W.2d 443, 445 (1955).

I see no bad faith or arbitrariness on the part of PNC, which was authorized to do just what it did, i.e. draw principal from the Schlegel trust to support Verna. The majority seems to say that merely because PNC had two trusts from which it could invade principal to support Verna, a "conflict of interest" was automatically created when PNC exercised its discretion as to which funds would be used for her support. I disagree. Regardless of whether the Moesser trust existed or not, PNC had the right, in its discretion, to invade the principal of the Schlegel trust, period, absent bad faith or arbitrary conduct. While I realize that PNC's decision lessened the amount of funds ultimately available to the Schlegel remaindermen, I do not perceive PNC's actions to have constituted bad faith or arbitrary conduct. For many years, PNC drew solely from the Moesser trust to support Verna. Not until Verna's nursing home expenses became inordinately high did PNC "dip into" the Schlegel trust, and even then, PNC continued to draw from the Moesser trust.

I agree with the trial court that, as trustee of two trusts involving a common income

beneficiary but different remainder interests, PNC owed the remaindermen of both trusts the duty of impartiality. Further, PNC was charged with protecting not only the corpus of the Schlegel trust and the interests of its beneficiaries, but also the corpus of the Moesser trust and the interest of its beneficiary, Verna's estate. As appellants point out, the principal amounts in the trusts, since the creation of the Moesser trust in 1983, had always been nearly equal. Interestingly, six years later, when all was said and done, and Verna had passed away, the principal amounts remaining in the two trusts were practically the same. How much more "impartial" could PNC have possibly been?

KRS 386.820(2) requires a trustee to obtain court approval for a "transaction" involving a" conflict of interest." Had PNC sold trust property to itself, a customer, a board member, one of its departments, or had it made use of trust property for its own purposes or done anything else for the benefit or gain of PNC Bank, or had it entered into a transaction involving dealing between both trusts, I believe KRS 386.820(2) would have required PNC to obtain court approval. These types of transactions, while not exhaustive, trigger KRS 386.820(2). I do not believe, however, that PNC's decision to use principal from the Schlegel trust as well as from the Moesser trust constituted a "conflict of interest." PNC had the authority to do precisely what it did, under the trust instrument, and needed no permission from the court to act in accordance with powers it already had. I would affirm the judgment of the Jefferson Circuit Court.