JP MORGAN CHASE BANK,
N.A., Appellant,

v.

John M. LONGMEYER (Executor and Trustee of Estate of Ollie W. Skonberg), Appellee.

No. 2005–SC–000313–DG.

Supreme Court of Kentucky.

Jan. 22, 2009.

Robert Gregg Hovious, John David Dyche, Tachau, Maddox, Hovious & Dickens, PLC, Louisville, KY, Counsel for Appellant.

Frank P. Doheny, Jr., Michael Marvin Hirn, Dinsmore & Shohl, LLP, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. *INTRODUCTION.*

JP Morgan Chase Bank's predecessor, Bank One, was trustee of a revocable living trust created by Ollie Skonberg, which provided lifetime income to Skonberg and substantial benefits of the remainder to several charitable and religious institutions at Skonberg's death. Skonberg revoked that trust and executed a new estate plan that eliminated the charitable and religious institutions as beneficiaries under circumstances raising questions of undue influence; and Bank One so informed the former trust beneficiaries, who sued Skonberg's estate after her death to set aside the new estate plan. After Skonberg's estate settled the suit with the beneficiaries, it then brought the instant case, claiming Bank One, as trustee, breached duties owed to Skonberg, including a duty not to disclose to the beneficiaries the fact and possibly dubious circumstances of the trust revocation. The trial court granted summary judgment in favor of Bank One. The Court of Appeals reversed.

We granted discretionary review to examine the law in Kentucky concerning the scope of the duties owed by a trustee or a former trustee of a living trust with testamentary provisions to the testamentary

beneficiaries of the trust upon the occurrence of a change in the beneficiary designation. Holding that Kentucky imposes a duty on the trustee of a living trust to inform the testamentary beneficiaries, we reverse the Court of Appeals and reinstate the trial court's judgment.

## II. FACTS.

In 1984, Ollie W. Skonberg, a wealthy widow known to be frugal, hired James L. Coorssen, an attorney, to prepare an estate plan for her that included a will and a revocable living trust. The trust named Skonberg as income beneficiary for her life. Other trust provisions specified beneficiaries who would receive various amounts of the estate at her death.

Three years later, Skonberg again engaged Coorssen to make some modifications in her estate plan, including instructions that a sizable portion of her estate be left in trust for the benefit of several charities, including The Salvation Army, the Louisville Deaf Oral School, the Cedar Lake Foundation, the Cabbage Patch Settlement, and Highland Presbyterian Church. This estate plan designated Bank One's predecessor, Liberty National Bank, as trustee. The record indicates that Skonberg paid Coorssen $100 for his work on this multi-million dollar estate plan.

Ten years passed, and Skonberg, who was by then ninety-three years old and in such declining health that she was nearly bedridden, hired another attorney, John M. Longmeyer, to make drastic changes in her estate plan. On August 27, 1997, after the new documents had been prepared, Skonberg revoked her 1987 testamentary trust and executed a new trust instrument, naming Longmeyer as sole trustee. Skonberg died six weeks later.

For some time before her death, Skonberg's deteriorating health required her to have full-time care in her home. Vicki Smothers, Skonberg's main caregiver, played a predominate role in Skonberg's life at that time. Smothers fed Skonberg, handled her financial affairs, and arranged all of her appointments. It was Smothers who suggested and contacted Longmeyer for the purpose of reviewing and revising the estate plan. Smothers testified that Longmeyer was randomly selected from listings in the telephone book.

Before drafting the new estate plan, Longmeyer met with Skonberg and Smothers. In fact, Smothers gave Longmeyer an outline of the desired revisions. The changes, reflected in Smothers's handwritten outline, included the removal of the charities as beneficiaries and the increase in the bequest to Smothers from $20,000 to $500,000. In addition, Longmeyer himself would replace Bank One as trustee of the revocable trust. In his role as trustee, the record indicates that Longmeyer received an annual compensation of approximately $100,000. Longmeyer was also paid $500 at the outset by Smothers with a check drawn on Skonberg's bank account. Although the record is not clear regarding the total amount Longmeyer received for revising Skonberg's estate plan, it is clear that he received at least $13,000; and he may have been paid as much as $25,000. In actuality, Longmeyer delegated the responsibility for drafting the documents to his son-in-law, an out-of-state attorney who was not licensed to practice law in Kentucky.

During the relevant time leading up to the revised estate plan, the only medical doctor to see Skonberg and to consider her testamentary capacity was another Longmeyer family member, his brother-in-law, Dr. John Lach, who visited Skonberg for a total of forty-five minutes. The witnesses to Skonberg's signing of the revised documents were Longmeyer, his wife, and his secretary.

After being informed of the change in trustees shortly before Skonberg's death, Bank One entered into an "investment agency agreement" with Longmeyer, the new trustee. This agreement delegated the management of the trust funds to Bank One. Upon Skonberg's death, Longmeyer was appointed executor and trustee of the estate; and Bank One continued to manage the trust funds in accordance with the investment agency agreement. But Longmeyer terminated the investment agency agreement about a month after Skonberg's death and transferred the trust funds to Paine Webber.

A short while later, in December 1997, Bank One contacted an experienced attorney in trusts and estates, Robert L. Hallenberg, regarding Skonberg's estate and the questionable circumstances that had culminated in the new estate plan. Hallenberg responded in an opinion letter, dated May 26, 1998, in which he advised Bank One that it had an obligation to notify the former trust beneficiaries of the nature of the revisions and the dubious circumstances involved.

Acting on Hallenberg's opinion letter, Bank One sent letters to each of the institutions that had been removed as beneficiaries by the Longmeyer-prepared instrument. Unknown to Bank One at that time, at least one of the charities had already learned of the effect of the Longmeyer revisions and had begun an investigation of its own.

The charities, as former beneficiaries, filed a will contest action against the decedent's estate and others, contending that Skonberg was unduly influenced in the drafting of the 1997 instrument. In due course, Longmeyer, as executor of the estate, settled on the eve of trial with the former beneficiaries for $1.875 million.

The case at hand arose when Longmeyer, as executor of the estate, brought suit against Bank One, as trustee of the 1987 revocable trust, to recover the $1.875 million the estate had paid in settlement to the former beneficiaries. The crux of Longmeyer's claim was that Bank One breached fiduciary duties when it disclosed what Longmeyer contended was confidential information about the trust to the former beneficiaries. Longmeyer contended that if Bank One had kept quiet about the 1997 revisions, the former beneficiaries would have been unaware that they had been ousted as Skonberg's beneficiaries and would not have brought the suit that resulted in the settlement.

The circuit court granted summary judgment in favor of Bank One, concluding that Bank One had a fiduciary duty as trustee of the 1987 revocable trust to inform the adversely affected beneficiaries of its suspicions surrounding Longmeyer's 1997 estate plan revisions. The circuit court reasoned that this duty existed "regardless of any motives that the bank may or may not have had." The Court of Appeals reversed the trial court and remanded for trial. We granted discretionary review to address the duties of Bank One, as former trustee, to the various parties.

### III. ANALYSIS.

#### A. A Trustee's Duty to Beneficiaries under Kentucky Law.

■ As trustee under the 1987 trust instrument, Bank One had an undisputed duty to administer the trust in the interest of the beneficiaries.[1] Undoubtedly, "[t]his duty is, in effect, that of *uberrima fides,* or utmost fidelity."[2] And Kentucky Revised

---

1. *Wiggins v. PNC Bank, Kentucky, Inc.,* 988 S.W.2d 498, 501 (Ky.App.1998).

2. *Bryan v. Security Trust Co.,* 296 Ky. 95, 99, 176 S.W.2d 104, 107 (1943). *See also Wig-*

Statutes (KRS) 386.705 recognizes a "general duty of the trustee to administer a trust expeditiously **for the benefit of the beneficiaries....**"[3] We have also held that a trustee has a specific duty, inherent to the trust relationship, to provide information relating to the trust and that this specific duty extends to conditional or contingent beneficiaries.[4]

Despite these accepted principles, the Court of Appeals held that Bank One had only two choices when Skonberg revoked the 1987 living trust: (1) to defend the trust in its own name under KRS 386.810(3)(y); or (2) to acquiesce, deem the revocation validly exercised, and surrender possession of the trust assets to Skonberg under KRS 386.810(1), (3).[5] If the latter occurred, as it did here, the Court of Appeals held that the former trustee forfeits the opportunity to: (1) challenge the revocation for itself, or (2) inform beneficiaries so that they could choose whether to challenge the revocation under KRS 386.675.[6] Upon our examination of controlling statutes, we conclude otherwise.

Kentucky trust law, established by our legislature, imposes a duty on trustees to keep beneficiaries reasonably informed of the trust and its administration, KRS 386.715,[7] without explicitly limiting this duty to irrevocable trusts.[8] This duty to

---

*gins*, 988 S.W.2d at 501 ("Generally, a trustee owes the duty of 'uberrima fides, or utmost fidelity' to the beneficiaries of a trust.").

**3.** Emphasis added.

**4.** *Day v. Walker*, 445 S.W.2d 422, 424 (Ky. 1969).

**5.** KRS 386.810(1) & (3) generally set forth a trustee's powers, subject to the trustee's "duty to act with due regard to his obligation as a fiduciary" recognized in KRS 386.810(2).

**6.** KRS 386.675(1) generally provides, in pertinent part, that "[j]udicial proceedings may be initiated by interested persons concerning the internal affairs of trusts ... [including] those concerning the administration and distribution of trusts, the declaration of rights and the determination of other matters involving trustees and beneficiaries of trusts."

**7.** KRS 386.715 generally provides that: "[t]he trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration."

We also note that KRS 386.715 also provides for more additional specific duties, which are not at issue here:
"(1) Within thirty (30) days after his acceptance of the trust, the trustee shall inform in writing the current beneficiaries and if possible, one (1) or more persons who may represent beneficiaries with future interests, of the court in which the trust is registered and of his name and address.
(2) Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect his interest and with relevant information about the assets of the trust and the particulars relating to the administration.
(3) Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee."
In regard to subsection 1, in particular, we note that inter vivos trusts, such as the one created by Skonberg here, are not subject to registration requirements under KRS 386.655 ("nor does the duty to register under this section apply to inter vivos trusts, whether revocable or irrevocable, unless the settlor of the trust so directs.").

**8.** The Historical and Statutory Notes to KRS 386.715 note that it is identical to Uniform Probate Code § 7–303. According to at least one legal scholar, "the duty to inform and report under the [Uniform Probate Code] runs to the broadly defined class of beneficiaries." Kevin D. Millard, *The Trustee's Duty to Inform and Report Under the Uniform Trust Code*, Real Property, Probate and Trust Journal, Summer 2005, at 373, 377. We note that Millard cites to Uniform Probate Code § 7–103 (2004) for this proposition (*see id.* at 377 n. 11), but we believe the proper citation would be to § 7–303 since § 7–103 of the Uniform Probate Code refers to the effects of registration.

beneficiaries of revocable trusts may not be consistent with modern trends in the law in other jurisdictions.[9] In fact, many laypersons who create revocable living trusts as will substitutes might be shocked to learn that a trustee has a duty to inform contingent beneficiaries of their potential interests, given the understanding of many settlors that so long as they are living and competent the trust assets remain essentially under their control and that they may freely change their mind about beneficiaries' interests. But if our trust statutes are out of touch with modern policy or with the expectations of today's community, it is the legislature's task to amend the statutes, not this Court's role to re-write them.[10]

While KRS 386.715 may not explicitly address what transpired here, it establishes a right of beneficiaries to information concerning their interest or expectancy in the trust.

■ There is no indication in KRS 386.715 of any intent to limit the term "trustee" in a manner that excludes former trustees. We will not judicially graft exceptions onto a statute, the plain language and meaning of which shows that the legislature intended there to be no exceptions.[11] Furthermore, KRS 386.715 does not distinguish between revocable trusts and other living or testamentary trusts. Based on the plain meaning of the language of KRS 386.715 ("[t]he trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration"), we believe a trustee has a statutory duty to communicate material facts affecting the interests of the beneficiaries. In this case, the 1997 revisions to Skonberg's trust instrument dramatically affected the interests of the former beneficiaries. In fact, the changes eliminated their interests altogether.

■ One who creates a living trust, revocable or irrevocable, necessarily involves one or more other parties. There must be a trustee and, by operation of law, certain duties devolve upon that trustee. There

---

**9.** *See* Millard, at 377 (explaining how the Uniform Trust Code, recently enacted in some jurisdictions, provides that the trustee of a revocable trust only owes duties to the settlor during the time the trust remains revocable and the settlor has capacity to revoke; thus the trustee's duty to inform and report applies only to the settlor of a revocable trust). *See also* Restatement (Third) of Trusts (2008) § 74(1) (stating that beneficiaries' rights "are exercisable by and subject to control of the settlor" under a revocable trust so long as the settlor retains the "capacity to act") & § 82(1)(a) (establishing a trustee's duty "promptly to inform fairly representative beneficiaries of the existence of the trust, of their status as beneficiaries and their right to obtain further information" but providing an exception "as provided in § 74" (revocable trusts)).

**10.** *See Sutton v. Transportation Cabinet, Com. of Ky.*, 775 S.W.2d 933, 934 (Ky.App.1989) (stating that courts are not "empowered to rewrite statutes to suit our notion of sound public policy when the General Assembly has

clearly and unambiguously established a different notion.").

**11.** *See generally* 82 C.J.S. *Statutes* § 371 (2008) ("As a general rule, exceptions to a statute must be expressed, and where an enactment is clear and unambiguous, the rules of statutory interpretation do not permit the courts, under the guise of construction, to insert exceptions not made by the legislature. It is therefore improper for a court to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions which conflict with a clearly expressed legislative intent. . . .

Thus, a statute will be construed to admit implied exceptions only when the intent of the legislature clearly supports such a construction, notwithstanding the literal sense and precise letter of the statute, and where it is apparent that no exceptions were intended, the courts cannot properly create them.") (footnotes omitted).

must also be beneficiaries and, at a minimum, certain expectations are created in that process. A trust instrument differs in concept from a will whereby one may execute and revoke the instrument without the involvement of others or creation of legal duties upon others. KRS 386.715 supports the view that, at a minimum, trust beneficiaries have a right to notice from the trustee.

Despite the statutory duty to give notice, Bank One delayed for several months; and Longmeyer argues that Bank One acted in bad faith when it finally gave the notice. To reiterate some relevant facts, on August 27, 1997, Skonberg revoked the 1987 living trust and executed a new revocable living trust, naming Longmeyer as sole trustee and replacing Bank One as Skonberg's trustee. By the terms of the new instrument, the charitable beneficiaries of the earlier trust were excluded and new beneficiaries were named. Nevertheless, Bank One and Longmeyer made a new agreement that allowed Bank One to remain as custodian of the new trust's funds. Only when Longmeyer terminated the investment agreement after Skonberg died and the trust funds were moved from the bank did Bank One give notice to the ousted beneficiaries.

While sour grapes might appear to be the most appropriate idiomatic metaphor to describe Bank One's motivation for notifying the original beneficiaries, we believe the actions it ultimately took were nevertheless required by law. Bank One's failure was its tardiness in making the disclosure rather than the fact of the disclosure. Whatever motivation it may have had, it nevertheless fulfilled its statutory obligations; and this can hardly be grounds for relief in favor of Longmeyer. Perhaps the original beneficiaries would have had a claim against Bank One if damages had resulted from the delay, but Longmeyer did not have a claim. Said otherwise, tardiness in giving required information is preferable to not giving it at all.

In our view, the action Bank One took to inform the former trust beneficiaries after Skonberg's death did not violate its obligations to Skonberg. The information Bank One sent in the letters to the charities plainly advised them of two things: first, that they had been removed from Skonberg's trust and, second, that there may have been some undue influence exerted upon Skonberg when she made the decision to remove them. Under KRS 386.715, Bank One was legally obligated to provide the charities this information. As such, Bank One cannot be liable to Skonberg's estate for violating a duty of confidentiality because the bank sent only the information that it was legally obligated to send and nothing more.

In fact, counsel for Longmeyer seemingly conceded in his oral argument that Bank One had some unspecified duty to the beneficiaries. He argued, however, that upon revocation of the first trust or upon entering into the investment agency agreement with Longmeyer, Bank One's duty to inform the charitable beneficiaries ceased. We reject this view and hold that the duty of disclosure existed without regard to Bank One's position as funds custodian under the investment agency agreement. The beneficiaries had the right to information upon which to decide whether to challenge revocation of the trust or to accept it.

### B. *No Duty to Settlor Breached.*

██ Any potential duties owed to the settler notwithstanding,[12] Kentucky law

---

12. We are unaware of any Kentucky cases expressly recognizing the existence of a trustee's duties to a settlor. *Clay v. Crawford*, 298 Ky. 654, 667, 183 S.W.2d 797, 804 (1944),

imposes no duty on a trustee to keep a beneficiary's interest secret because no such duty is expressly created by statute, which contrasts with the explicit duty to keep beneficiaries informed under KRS 386.715. So the bank's revelation to the charities that they had been beneficiaries under a trust that was revoked under questionable circumstances did not violate any duty to the settlor recognized by Kentucky law.

### C. *No Fiduciary Duties under Investment Agency Agreement.*

■ Longmeyer also contends that Bank One owed a fiduciary duty to him arising out of the investment agency agreement. On this point, we agree with the trial court that Longmeyer's claim regarding duties owed to him "find[s] no support in the law and cannot abrogate the Bank's clearly defined obligation."

The investment agency agreement established a contractual relationship between Bank One and Longmeyer. And the duties arising from that relationship were limited to the terms of the agreement between the parties. So Bank One owed Longmeyer only the duty to carry out the terms of the investment agency agreement. This agreement, as the name suggests, related only to the investment of estate funds and had nothing to do with the beneficiaries of the estate. Longmeyer does not claim that Bank One provided the charitable beneficiaries with financial details of Skonberg's estate or with the names of other interested beneficiaries. Longmeyer's contention that Bank One should not have disclosed information related to the revocation of the 1987 trust or disclosed its concerns for possible undue influence based on the investment agency agreement extends that agreement far beyond its terms. As such, Bank One had no duty to Longmeyer in this context.

In short, Bank One's informing the charities that they had had interests under a trust instrument revoked under circumstances raising questions of undue influence amounted to compliance with its duties owed to beneficiaries under Kentucky law and not to violation of any established duty to others under Kentucky law or the investment agency agreement. Furthermore, we agree with the trial court

which the Court of Appeals cited for the proposition that "[t]he first duty of any trustee is to faithfully execute the trust according to the intent of the settlor", actually stated only that "[t]he fundamental rule in the construction of a trust instrument is to ascertain the intent of the parties, particularly of the trustor." We note that some (including the trial court in this case) have even stated that a trustee owes only duties to the beneficiaries and none to the settlor under Kentucky law. We note that KRS 386.705, for instance, recognizes a "general duty of the trustee to administer a trust expeditiously for the benefit of the beneficiaries." But no similar provision recognizing the existence of duties towards the settlor exists. Again, this may be somewhat inconsistent with modern trends as we note that under the latest Restatement on Trusts, "(1) [w]hile a trust is revocable by the settlor and the settlor has the capacity to act: ... (b)

[t]he rights of the beneficiaries are exercisable by and subject to the control of the settlor." Restatement (Third) of Trusts § 74 (2008). The comments to subsection (1)(b) of Section 74 states that as long as the trust is revocable and the settlor is competent, "the trustee's duties are owed primarily to the settlor, or solely to the settlor insofar as the rights of other beneficiaries are preempted by conduct of the settlor" and that the trustee is not to provide information to other beneficiaries unless the trust so provides or the settlor consents. However, we note that even under this same section, if the settlor becomes incompetent, the trustee must then provide beneficiaries with information to allow them to take steps to protect against breaches of trust. Again, however, any statutory remedy in this area must come from the General Assembly, not this Court.

that Longmeyer failed to point to any evidence of an actual "false representation" by Bank One employees that could support a claim of fraud or estoppel.

## IV. CONCLUSION.

Because we agree with the trial court that Bank One's actions did not contravene any duty recognized under Kentucky statutory trust law, we conclude that the Court of Appeals erred in reversing the summary judgment granted by the trial court. So we reverse the Court of Appeals and reinstate the final judgment of the trial court.

MINTON, C.J.; CUNNINGHAM, NOBLE, and SCHRODER, JJ.; and Special Justice VIRGINIA C. WHITTINGHILL and Special Justice RON JOHNSON sitting.
CUNNINGHAM and NOBLE, JJ., and Special Justices WHITTINGHILL and JOHNSON concur. SCHRODER, J., dissents by separate opinion.
ABRAMSON, SCOTT, and VENTERS, JJ., not sitting.

Dissenting Opinion by Justice SCHRODER.

This case turns on the trustee's duties and obligations, if any, to a settlor and to the beneficiaries, *after* the trust is revoked. It is black letter law that upon the execution of a trust, the person accepting the position of trustee has a duty to execute the trust according to the intent of the settlor. *Hurst v. First Ky. Trust Co.,* 560 S.W.2d 819, 822 (Ky.1978) (explaining that a trustee's distribution of the trust property in a way that violated the settlor's intent was a violation of the trustee's duty as a fiduciary); *see also* KRS 386.452(1)(a). The trustee also owes a duty of utmost fidelity to the beneficiaries. of the trust. *Wiggins v. PNC Bank, Kentucky, Inc.,* 988 S.W.2d 498, 501 (Ky.App.1998) and KRS

386.705. This includes a duty to inform beneficiaries of the trust and its administration. KRS 386.715. The trustee's duty to inform the beneficiaries about the trust exists whether the beneficiaries' interest are vested or contingent. *Day v. Walker,* 445 S.W.2d 422, 424 (Ky.1969). Because Ollie, the settlor, retained a power to revoke the trust, the trustee had a duty to the settlor as a remainderman, if said power of revocation was exercised, to wind up the trust and surrender its possessions to the settlor. *See generally* KRS 386.810(1), (3); *and Beeler v. Fidelity & Columbia Trust Co.,* 293 Ky. 361, 169 S.W.2d 16 (1943); *see also* KRS 386.450(2) (beneficiary includes a remainder beneficiary).

In the case sub judice, Ollie, the settlor, revoked (or attempted to revoke) the trust. Bank One, the trustee, had a duty to return the trust property (res) to the settlor if the revocation was validly exercised. KRS 386.810(1). If the trustee had a serious question about undue influence, fraud, or other irregularities, the trustee could defend the trust, and defend it in its own name. KRS 386.810(3)(y). It was not necessary to have the beneficiaries file suit—although either or both had standing to do so. KRS 386.675. Here, the trustee returned the property, closed the trust account, and *then* notified the former beneficiaries of their lost interest and the possible irregularities, such as undue influence. This is more than "sour grapes." I agree with the Court of Appeals that the timing is important because at the time of notification, the trustee had already made a decision to honor the revocation, had already closed out the trust account, and entered into a subsequent contract with the new trustee to manage the assets. Having decided to honor the revocation, the trustee's duties were to the settlor, to wind up the trust and return the property, which it did. When the trust ceased, so

did any *further* duty of notification to the former beneficiaries. Granted, under KRS 386.675, the former beneficiaries still have standing to contest the revocation, but that does not create an obligation on a former trustee to *volunteer* further notices (even though all of this information is available through discovery).

At this point, the question becomes whether the former settlor has a cause of action against a former trustee who volunteers information to former beneficiaries. Again, I agree with the Court of Appeals that the information may have potentially been confidential information, but there are numerous questions of fact and law that are unanswered. In such a case, summary judgment was improper and the matter must be vacated and sent back for trial. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991). I would affirm the Court of Appeals.