RENDERED: AUGUST 27, 2021, 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1700-MR

AL J. SCHNEIDER COMPANY,
DAVID OETKEN, TODD OETKEN, AND
NANCY O'HEARN                                                    APPELLANTS

|  |  |
|---|---|
|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| v. | HONORABLE BRIAN C. EDWARDS, JUDGE |
|  | ACTION NO. 16-CI-001164 |

MARY S. MOSELEY; DAWN M. HITRON;
MICHAEL B. MOUNTJOY; R. JOSEPH MITTELL;
CHRISTE COE; RANDY COE; SHANE MOSELEY;
SAM MOSELEY, IN HIS INDIVIDUAL CAPACITY OR
HIS CAPACITY AS TRUSTEE OF THE MARY S. MOSELEY
IRREVOCABLE TRUST; PNC BANK N.A.; KEVIN FORD,
GUARDIAN AD LITEM APPOINTED TO REPRESENT
THE INTERESTS OF THE UNBORN/UNKNOWN/MINOR
BENEFICIARIES OF THE ALTON JOHN SCHNEIDER
RESTATED REVOCABLE TRUST; JEFFREY A. BUTLER;
AMANDA LOUISE BUTLER; ALLIE WELLINGHURST;
DANIAL L. OETKEN; GERRI L. FIHE; KEVIN A. OETKEN;
KERRI TERESA SULLIVAN; CHRISTOPHER OETKEN
CATT; ALTON J. SCHNEIDER, III; ANTHONY G. BUTLER;
CANDICE SCHNEIDER POLIO; OLIVIA SCHNEIDER
LANNING; REBECCA RICHARDSON; MICHAEL A.
SCHNEIDER; WALTER SLATER COE; KELLY COE
DOLLINGER; CONNIE SCHILFFARTH; JACQUELYN

BAINBRIDGE; ADDIE BAINBRIDGE; AUSTIN BAINBRIDGE; AMY ELIZABETH BISIG; NORA KATE BISIG; ANNIE BISIG; CONNOR R. KILLOUGH; ELI OETKEN; FINN OETKEN; JUDE OETKEN; KATHERYN E. CURRAN; JACKSON F. CURRAN; CALVIN CURRAN; MARY ANN OETKEN; ERIN E. FIHE; JOHN C. FIHE; TIMOTHY TODD OETKEN, JR.; TIMOTHY TODD OETKEN, SR.; HEATHER HAYDON; GRACE I. HAYDON; ELEANOR M. HAYDON; ANNA E. HITRON; ALICE M. JOHNSON; HAGAN EDWARD O'HEARN; THOMAS O'HEARN, II; ANTHONY KAYO POLIO; KENNEDY RIYANN POLIO; KRUZE POLIO; MAGGIE M. HITRON; NICOLE MOSELEY JAEGER; FELIX JAEGER; CORA JAEGER; JOSEPH SCHILFFARTH; ASHLEY SCHILFFARTH; ALTON JOHN SCHNEIDER, IV; KELSEY SCHNEIDER; NICHOLAS SCHNEIDER; HAZEL SCHNEIDER; LILA NOELLE SCHNEIDER; SLOANE MOSELEY; MILA CAR MOSELEY; PHILLIP MICHAEL SULLIVAN; SEAN PATRICK SULLIVAN, SALLY E. WELLINGHURST; KAREN WELLINGHURST; KRISTEN JOY OETKEN; DANIEL JOSEPH OETKEN; LANDON ANTHONY BELL; DANIEL L. OETKEN; ERIK D. OETKEN; JORDYN L. OETKEN; COURTNEY OETKEN; NATHAN OETKEN; ALEXIS K. BUTLER; AND JOHN ANDREW HITRON, IN HIS INDIVIDUAL CAPACITY OR HIS CAPACITY AS TRUSTEE OF THE DAWN M. HITRON IRREVOCABLE TRUST                                     APPELLEES


AND                              NO. 2020-CA-0748-MR


MARY S. MOSLEY;[1] AND DAWN M. HITRON          CROSS-APPELLANTS

---

[1] The body of the notice of cross-appeal identifies Mary S. Moseley's last name as "Mosely." This appears to be a typographical error from our review of the record below.

AL J. SCHNEIDER COMPANY; DAVID OETKEN;
TODD OETKEN; NANCY O'HEARN;
MICHAEL B. MOUNTJOY; R. JOSEPH MITTELL;
CHRISTE COE; RANDY COE; SHANE MOSELEY;
SAM MOSELEY, IN HIS INDIVIDUAL CAPACITY OR
HIS CAPACITY AS TRUSTEE OF THE MARY S. MOSELEY
IRREVOCABLE TRUST; PNC BANK N.A.; KEVIN FORD,
GUARDIAN AD LITEM APPOINTED TO REPRESENT
THE INTERESTS OF THE UNBORN/UNKNOWN/MINOR
BENEFICIARIES OF THE ALTON JOHN SCHNEIDER
RESTATED REVOCABLE TRUST; JEFFREY A. BUTLER;
AMANDA LOUISE BUTLER; ALLIE WELLINGHURST;
DANIAL L. OETKEN; GERRI L. FIHE; KEVIN A. OETKEN;
KERRI TERESA SULLIVAN; CHRISTOPHER OETKEN
CATT; ALTON J. SCHNEIDER, III; ANTHONY G. BUTLER;
CANDICE SCHNEIDER POLIO; OLIVIA SCHNEIDER
LANNING; REBECCA RICHARDSON; MICHAEL A.
SCHNEIDER; WALTER SLATER COE; KELLY COE
DOLLINGER; CONNIE SCHILFFARTH; JACQUELYN
BAINBRIDGE; ADDIE BAINBRIDGE; AUSTIN BAINBRIDGE;
AMY ELIZABETH BISIG; NORA KATE BISIG; ANNIE BISIG;
CONNOR R. KILLOUGH; ELI OETKEN; FINN OETKEN;
JUDE OETKEN; KATHERYN E. CURRAN; JACKSON F.
CURRAN; CALVIN CURRAN; MARY ANN OETKEN;
ERIN E. FIHE; JOHN C. FIHE; TIMOTHY TODD OETKEN,
JR.; TIMOTHY TODD OETKEN, SR.; HEATHER
HAYDON; GRACE I. HAYDON; ELEANOR M. HAYDON;
ANNA E. HITRON; ALICE M. JOHNSON; HAGAN
EDWARD O'HEARN; THOMAS O'HEARN, II; ANTHONY
KAYO POLIO; KENNEDY RIYANN POLIO; KRUZE
POLIO; MAGGIE M. HITRON; NICOLE MOSELEY
JAEGER; FELIX JAEGER; CORA JAEGER; JOSEPH
SCHILFFARTH; ASHLEY SCHILFFARTH; ALTON JOHN
SCHNEIDER, IV; KELSEY SCHNEIDER; NICHOLAS
SCHNEIDER; HAZEL SCHNEIDER; LILA NOELLE

SCHNEIDER; SLOANE MOSELEY; MILA CAR MOSELEY;
PHILLIP MICHAEL SULLIVAN; SEAN PATRICK SULLIVAN,
SALLY E. WELLINGHURST; KAREN WELLINGHURST;
KRISTEN JOY OETKEN; DANIEL JOSEPH OETKEN;
LANDON ANTHONY BELL; DANIEL L. OETKEN; ERIK
D. OETKEN; JORDYN L. OETKEN; COURTNEY OETKEN;
NATHAN OETKEN; ALEXIS K. BUTLER; AND JOHN
ANDREW HITRON, IN HIS INDIVIDUAL CAPACITY
OR HIS CAPACITY AS TRUSTEE OF THE DAWN M.
HITRON IRREVOCABLE TRUST          CROSS-APPELLEES

<u>OPINION</u>
<u>AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  KRAMER, McNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  The Al J. Schneider Company (hereinafter referred to as "the Company"), David Oetken, Todd Oetken, and Nancy O'Hearn appeal from orders of the Jefferson Circuit Court which granted Mary S. Moseley and Dawn M. Hitron's motions for a judgment on the pleadings.  Mary S. Moseley and Dawn M. Hitron cross-appeal an order of the circuit court which certified the orders granting a judgment on the pleadings as final and appealable.  We affirm the trial court's order being appealed by Ms. Moseley and Ms. Hitron, but reverse and remand the orders granting a judgment on the pleadings.

## FACTS AND PROCEDURAL HISTORY

Alton John Schneider, founder and sole owner of the Company, created the Alton John Schneider Trust. When Mr. Schneider passed away in 2001, all of the shares of the Company went into the trust. All of the stock was to remain in the trust until June 1, 2016, when the shares would be distributed to Mr. Schneider's four living daughters, Ms. Moseley, Ms. Hitron, Christe Coe, and Nancy O'Hearn. Also receiving shares would be the offspring of two deceased children. This included David and Todd Oetken. Various grandchildren and great-grandchildren also were named beneficiaries in the trust. In total, there were 21 beneficiaries named in the trust. Mr. Schneider named five trustees to administer the trust: Ms. Moseley, Ms. Hitron, Ms. Coe, Michael Mountjoy,[2] and Joseph Mittel.[3] The terms of the trust specifically allowed his daughters to hold positions as trustees, beneficiaries of the trust, and board members of the Company.

In 2005, the trustees adopted a shareholder agreement which restricted the transfer of the Company's stock. In early 2012, the trustees decided to amend the 2005 shareholder agreement to create two classes of stock: Class A voting stock and Class B non-voting stock. The new agreement would also amend other sections of the 2005 shareholder agreement. One such amendment was a put

---

[2] Mr. Schneider's accountant.

[3] A former general manager of the Galt House Hotel.

provision.  This would force the Company to buy back a shareholder's shares whenever requested by said shareholder.  In essence, it was a way for a shareholder to exit the Company.  Around this same time, certain beneficiaries of the trust formed a Governance Working Committee to advise the trustees of shareholder concerns and debate the terms of the new shareholder agreement.  Some of the trust beneficiaries did not want the put provision to be included in the new shareholder agreement.

In August of 2012, the trust's trustees voted to approve the new 2012 shareholder agreement, which included the put provision.  The Board of Directors of the Company later also adopted the new shareholder agreement.  After the adoption of the new agreement, the new Class B stock was distributed to the shareholders.

In 2016, certain beneficiaries petitioned the court to remove Appellees as trustees.  That is what began this underlying case.  Appellees then petitioned the court to declare that the trust is valid and that they were proper trustees.  Later, new claims were brought regarding a dispute amongst the beneficiaries as to whether to liquidate corporate assets, and some shareholders filed a shareholder derivative suit.  Some of these issues are still part of ongoing litigation.

Relevant to our purposes is a counter petition for declaration of rights filed by the Company.  On September 5, 2017, the Company filed a petition for

declaratory judgment regarding the interpretation and enforcement of the 2012 shareholder agreement and the put provision. The Company alleged that Appellees had a conflict of interest because they were trustees, beneficiaries of the trust, and members of the Company board. The Company further alleged that the put provision included in the 2012 shareholder agreement was not in the best interest of the Company or the trust's beneficiaries. The Company argued that the 2012 shareholder agreement should be voided due to Appellees' conflict of interest, Appellees' breach of fiduciary duties, and the allegation that the put provision is not in the best interests of the Company or the trust beneficiaries.

On August 9, 2018, the Company filed a motion to amend its petition and an amended petition. The amended petition expanded on the alleged facts surrounding the 2012 shareholder agreement. It also alleged Appellees engaged in fraud, misrepresentation, and bad faith. On September 7, 2019, Messrs. Oetken and Ms. O'Hearn filed an intervening petition for declaratory judgment. They were also seeking declaratory judgment that the new shareholder agreement was void. They incorporated into their petition the facts and allegations set forth in the Company's amended petition. In essence, they alleged Appellees had conflicts of interest, acted in bad faith, and engaged in fraud and misrepresentation.[4]

---

[4] In its order granting Appellees' motion for judgment on the pleadings, the trial court also denied the Company's motion to amend its petition. The court held that because it was ruling in favor of Appellees and the amended complaint only expanded on the facts alleged in the original

Appellees filed a counterclaim seeking enforcement of the 2012 shareholder agreement. Section 3 of the 2012 agreement requires the Company to perform a valuation every year. Appellees claimed that the Company did not perform the 2017 evaluation. Appellees alleged this was done to thwart their attempt to use the valuation amount when exercising the put provision.

Appellees later filed motions seeking judgment on the pleadings against Appellants. Appellees argued that Mr. Schneider recognized and permitted the conflicts of interest when he created the trust because it specifically allows Appellees to be trustees, beneficiaries, and Company board members. Appellees also claimed that the 2012 shareholder agreement was valid because the other three trustees approved of it and the trustees were able to act by simple majority pursuant to the terms of the trust.

On November 19, 2018, the trial court entered an order granting Appellees' motion for judgment on the pleadings as against the Company. The court cited to *In re Flagg's Estate*, 365 Pa. 82, 73 A.2d 411 (1950), in holding that Mr. Schneider intended that conflicts of interest might arise due to Appellees being trustees, beneficiaries, and Company board members pursuant to the terms of the

_____

petition, it was moot. Even though the trial court denied the Company's motion to amend the petition, we will still consider it in our analysis. The court addressed some of the allegations found in the amended petition in the order granting Appellees' motion for judgment on the pleadings. Furthermore, the Oetken and O'Hearn petition for declaration of rights incorporated all of the Company's amended petition in their petition.

trust. The court believed that Mr. Schneider, as the testator, had the power to allow these conflicts to exist during the administration of the trust.

On September 4, 2019, the trial court entered an order granting Appellees' motion for a judgment on the pleadings as against Messrs. Oetken and Ms. O'Hearn. The trial court reiterated its previous holding from its order granting a judgment on the pleadings as against the Company. It also held "that a trustee may occupy conflicting positions in handling the trust where the trust instrument contemplates, creates, or sanctions the conflict of interest." *In re Estate of Halas*, 209 Ill. App. 3d 333, 344, 568 N.E.2d 170, 178 (1991) (citations omitted). Like its previous order, the court held that Mr. Schneider intended that the trust be run by trustees with dual roles and potential conflicts of interest. The court also held that there was no evidence that the 2012 shareholder agreement was enacted in bad faith.

The court also addressed Kentucky Revised Statute (KRS) 386.820. Specifically, the court addressed the version of the statute in effect in 2012 when the new shareholder agreement was created. The 2012 version of KRS 386.820(2) stated in relevant part: "If the duty of the trustee and his individual interest or his interest as trustee of another trust, conflict in the exercise of a trust power, the power may be exercised only by court authorization . . . upon petition of the trustee." The court held that this statute did not apply because the new shareholder

agreement was accepted by all five trustees, including three who had no conflict of interest, namely Ms. Coe, Mr. Mountjoy, and Mr. Mittel. The court concluded that any possible conflict was cured by approval of the majority of disinterested trustees; therefore, court approval was unnecessary.

On September 19, 2019, Appellees attempted to exercise the put provision of the 2012 agreement. They discovered that the Company had in fact had a valuation done in 2018. They sought to use the valuation and requested a buyout of their shares. The Company refused to honor the demand. On September 25, 2019, Appellees filed a motion for leave to amend their counterclaim. They sought to add a claim for breach of the 2012 agreement because the Company refused to allow them to exercise the put provision.

On September 26, 2019, Messrs. Oetken and Ms. O'Hearn filed a motion requesting that the trial court designate the two orders granting judgment on the pleadings as being final and appealable. Appellees objected to this request. They argued that the issue of damages for breach of the valuation provision had yet to be determined and allowing the appeal of the two judgment on the pleadings orders would result in piecemeal litigation. On November 1, 2019, the court entered an order granting the motion to make the orders final and appealable.

That same day Appellees filed a motion asking the court to reconsider its order making the two other orders final and appealable. They argued that the

motion to amend their counterclaim was still pending and that damages for the breach of the valuation and put provision sections of the 2012 agreement had yet to be determined.

On November 13, 2019, Appellants filed a joint notice of appeal in which they appealed the two orders granting judgment on the pleadings.

On May 29, 2020, the trial court entered an order denying Appellees' motion to reconsider the order making the judgment on the pleading orders final and appealable. The court held that at the time it made the two orders final and appealable, there were no outstanding issues regarding the put provision, only issues regarding the valuation. The court held that while Appellees had moved to amend their counterclaim to include put provision claims, that motion had not been granted or fully briefed. The court held that Appellees failed to meet their burden for reconsideration. That same day, the court entered another order holding Appellees' motion to amend their counterclaim in abeyance pending the outcome of Appellants' appeal.

Appellees then filed a notice of cross-appeal in which they appealed the court's order making the judgment on the pleadings orders final and appealable.

## ANALYSIS

We will first address Appellees' cross-appeal. They are appealing from the trial court's order designating the November 19, 2018, and September 4, 2019, orders against Appellants as final and appealable pursuant to Kentucky Rules of Civil Procedure (CR) 54.02. CR 54.02(1) states in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Appellees argue that there are still closely related issues to be determined and that the trial court erred in ruling the two judgment on the pleadings orders were final and appealable. Appellees claim the two orders did not fully adjudicate their counterclaims, specifically the damages for failing to do a valuation and for failing to redeem their shares pursuant to the terms of the put provision. They argue the court should make a ruling on these issues before the judgment on the pleadings orders can be deemed final and appealable.

-12-

In any case presenting multiple claims or multiple parties, CR 54.02 . . . vests the trial court–as the tribunal most familiar with the case–with discretion to "release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions." In such a case, the trial court functions as a "dispatcher." If the trial court grants a final judgment upon one or more but less than all of the claims or parties, that decision remains interlocutory unless the trial court makes a separate determination that "there is no just reason for delay." And the trial court's judgment shall recite such determination and shall recite that the judgment is final.

A reviewing court, in turn, examines the trial court's certification on two levels. First, an appellate court must determine that the trial court rendered a final adjudication upon one or more claims in litigation. A final adjudication is a judgment that conclusively determines the rights of the parties in regard to that particular phase of the proceeding. Second, once an appellate court determines that the trial court rendered a final adjudication upon one or more claims in litigation, an appellate court then examines the trial court's certification for abuse of discretion in releasing for appeal a final decision upon one or more, but less than all the claims.

*Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 726 (Ky. 2008)

(footnotes and citations omitted).

In the exercise of that discretion the trial judge must balance this Court's historic policy against piecemeal appeals[] and the practical needs of the particular case before him. The entering of certification under CR 54.02 is no more automatic than is an extension of time to file a record on appeal under CR 73.08. The trial judge should always determine in entering a certification under CR 54.02 that the order

-13-

> being certified is sufficiently important and severable to entitle a party to an immediate appellate review.

*Jackson v. Metcalf*, 404 S.W.2d 793, 794-95 (Ky. 1966) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

We believe the trial court reasonably exercised its discretion in designating the two judgment on the pleadings orders as final and appealable. These two orders ended the declaratory judgment actions brought by Appellants and conclusively determined that the 2012 shareholder agreement was not procured through unreasonable conflicts of interest, fraud, or bad faith. It was also reasonable to allow Appellants to immediately appeal these orders because Appellants could no longer participate in the continuing litigation before the trial court unless an appellate court reversed and remanded. In addition, since the two orders being appealed ended the causes of action at the pleadings stage, it would be a waste of time and resources for the case to fully conclude and then potentially later get reversed and remanded by an appellate court. Finally, even though Appellees may have counterclaims against the Company, there are no further claims against Messrs. Oetken and Ms. O'Hearn related to their declaratory action. Allowing Messrs. Oetken and Ms. O'Hearn to appeal because their claims have been fully adjudicated, but not allowing the Company to appeal over the same

-14-

issue, would be illogical. We believe it is reasonable to determine if the 2012 shareholder agreement and put provision are valid before moving on to issues of damages for failing to adhere to the terms of said agreement.

We also believe that case law supports this conclusion. In *Preferred Risk Mutual Insurance Company v. Kentucky Farm Bureau Mutual Insurance Company*, 872 S.W.2d 469 (Ky. 1994), Preferred Risk Mutual Insurance Company sought a declaration of rights regarding a policy issued by Kentucky Farm Bureau Mutual Insurance Company and sought to recover damages from Kentucky Farm Bureau. The trial court granted a declaratory judgment in favor of Preferred Risk and allowed Kentucky Farm Bureau to immediately appeal. The Kentucky Supreme Court held this was proper even though issues of damages were still outstanding. *Id.* at 470. *See also Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 9, 100 S. Ct. 1460, 1465, 64 L. Ed. 2d 1 (1980) (where the United States Supreme Court held that the existence of a counterclaim does not render the federal version of CR 54.02 certification inappropriate).

Based on the foregoing, we conclude that the trial court did not abuse its discretion in ordering the two judgment on the pleadings orders as final and appealable.

We now move on to Appellants' appeal. They argue that the trial court erred in granting Appellees' motions for judgment on the pleadings.

-15-

Appellants claim that they made sufficient allegations to survive such a motion. We agree.

A judgment on the pleadings is a question of law and is reviewed *de novo*. *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 238-39 (Ky. 2020).

> [A] judgment on the pleadings can be granted only if, on the admitted material facts, the movant is clearly entitled to a judgment. Relief must be denied if there is a material issue of fact. Such motion is to be determined solely on the pleadings and is equivalent to a demurrer on the pleadings. When a party moves for judgment on the pleadings, he admits for the purposes of his motion not only the truth of all of his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all of his own allegations which have been denied by his adversary. The question thus presented is one of law and requires an examination of the pleadings.

*Archer v. Citizens Fidelity Bank & Trust Co.*, 365 S.W.2d 727, 729 (Ky. 1962) (citations omitted). Not only does the moving party admit the truth of the non-moving party's allegations, but he also admits the truth of the non-moving party's defenses. *Sheffer v. Chromalloy Min. and Mineral Division of Chromalloy American Corp.*, 578 S.W.2d 594, 595 (Ky. App. 1979). Also, only the denial of material facts will be effective in defeating a motion for judgment on the pleadings, denial of legal conclusions will not. *Archer*, *supra*.

> Importantly, a motion for judgment on the pleadings should never be granted unless "it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." Furthermore, as our predecessor Court stated, if "the pleadings raise any issue

of material fact," then a judgment on the pleadings "should be denied."

*Russell*, 610 S.W.3d at 240 (citations omitted).

As stated previously, the trial court, relying on *In re Flagg's Estate*, *supra*, and *In re Estate of Halas*, *supra*, held that because Mr. Schneider's trust allowed Appellees to hold conflicting positions, their conflicts of interest could not void the 2012 shareholder agreement or put provision. The trial court also held that KRS 386.820, which requires court approval of a trustee's exercise of power when there is a conflict of interest, did not apply because the trust was allowed to act based on a majority vote. The court concluded that because there was no allegation of bad faith or conflict of interest on the part of the other three trustees, their ratification of the 2012 agreement negated the need for Appellees to seek court approval via KRS 386.820. Finally, the trial court held that Appellants made no allegations of bad faith.

We agree with the trial court that if the settlor of a trust allows trustees to hold conflicting positions, such as is the case here, then alleged conflicts of interest would not void actions of the trustees. "The intention of the testator is the polestar guiding the court in the construction of a will. An action to interpret a will or trust document or an action for breach of a trustee's fiduciary duties is consistent with the [well-established] rule that the deceased's intent be effectuated." *Commonwealth Bank & Tr. Co. v. Young*, 361 S.W.3d 344, 353 (Ky.

-17-

App. 2012) (internal quotation marks and citation omitted). We also agree with the trial court that this permissive action would not apply to acts of bad faith. "[T]he court will not restrict the trustee in the exercise of his discretion unless it appears that he is guilty of bad faith or is acting in an arbitrary manner." *Combs v. Carey's Tr.*, 287 S.W.2d 443, 445 (Ky. 1955) (citation omitted). Finally, we further agree with the trial court that if a trust allows trustees to act by simple majority, and a majority of disinterested trustees vote one way, then the trustees who have the conflict of interest do not need court approval pursuant to KRS 386.820. We believe the majority vote of three disinterested trustees, or trustees who have not been alleged to have done wrong, would also allow the trust to act even though other trustees violated their trustee duties.[5]

Where we disagree with the trial court is its findings that Appellants made no allegations of bad faith and that Appellants made no allegations that the other three trustees were all disinterested. We will first address the bad faith issue. We believe Appellants raised sufficient allegations of bad faith, contrary to the finding of the trial court. Appellants alleged that Appellees and Mr. Mountjoy fraudulently misrepresented the fact that the new Class B stock could only be issued after the new 2012 shareholder agreement was completed. Appellants

---

[5] Such duties include administering the trust in good faith, KRS 386B.8-010; a duty of full disclosure, KRS 386B.8-130; a duty to act with care, KRS 386B.8-040; and a duty of loyalty KRS 386B.8-020.

-18-

claimed in their pleadings that the trust beneficiaries could have received the new Class B stock before the new agreement. These new shares were to go directly to the trust beneficiaries and not into the trust. Appellants alleged that had the beneficiaries received the Class B stock, they could have used the collective voting power of their shares to prevent the new shareholder agreement from being entered into. Supporting this allegation are the following facts contained in the pleadings: (1) a probate court ordered that the Class B shares be distributed to the beneficiaries by July 8, 2012; (2) the shares were not distributed until early September 2012, shortly after the new shareholder agreement was ratified by the trust; and (3) Mr. Mountjoy was responsible for valuing the Class B shares. Essentially, Appellants alleged that Appellees and Mr. Mountjoy purposefully delayed the issuance of the Class B stock until after the new 2012 shareholder agreement was completed.

These allegations must be taken as true for the purposes of a motion for a judgment on the pleadings.

> "The law does not permit a person in a fiduciary capacity to handle the beneficiary's property so as to further his own ends." Rather, a fiduciary "owes the duty of utmost fidelity and loyalty to the beneficiary and if it appears that the trustee is guilty of such self-dealing the courts will not hesitate to declare such a transaction void."

*Osborn v. Griffin*, 50 F.Supp.3d 772, 794 (E.D. Ky. 2014), *aff'd*, 865 F.3d 417 (6th Cir. 2017) (citations omitted). We conclude that a fraudulent misrepresentation

like this could constitute bad faith and would negate the actions of Appellees and Mr. Mountjoy in the ratification of the new shareholder agreement. The trial court erred in finding no allegations of bad faith.

As to whether the other three trustees were disinterested, innocent, and did not breach fiduciary duties, there are some allegations that Mr. Mountjoy might have acted in bad faith, as we have previously discussed. Additionally, Appellants' pleadings alleged that Mr. Mountjoy breached his fiduciary duties because the put provision would greatly hamper the ability of the Company to expand and could force a sale of the business. Further, Appellants alleged that the beneficiaries made it known to the trustees that they did not approve of the inclusion of the put provision. If this is true, then Mr. Mountjoy would have breached his fiduciary duties to the beneficiaries of the trust by ignoring their wishes. Additionally, if the B Stock could have been distributed to the beneficiaries before the entry of the new shareholder agreement, and Mr. Mountjoy knew of such, then he had a duty to inform the beneficiaries. Finally, if Mr. Mountjoy knew the put provision would harm the interests of the beneficiaries, as alleged in Appellants' pleadings, then he would have violated his fiduciary duties.[6] We believe Appellant made sufficient allegations that Mr. Mountjoy either acted in

_____

[6] Appellants do not say that Mr. Mountjoy specifically did these things, but stated that the "trustees" violated said fiduciary duties. Mr. Mountjoy is a trustee; therefore, he is included in the allegations against the group.

-20-

bad faith or disregarded his duties as trustee. If so, then it is possible a majority of trustees were not disinterested, acting in good faith, or acting pursuant to their fiduciary duties.

Finally, we believe there is insufficient evidence at this time to support the trial court's conclusion that Mr. Schneider's intent was to allow the trust to waive all conflicts of interest and fiduciary duties as to Appellees. The trust does allow Appellees to be trustees, beneficiaries, and board members of the Company, which suggests some leeway as to conflicts of interest; however, we believe there needs to be further proceedings to determine if this allows Appellees to act solely in their self interest and ignore the wishes of the other beneficiaries. "Generally, a trustee owes the duty of 'uberrima fides, or utmost fidelity' to the beneficiaries of a trust. According to *Black's Law Dictionary* 299 (6th ed.1990), a conflict of interest exists in '[a] situation in which regard for one duty tends to lead to disregard of another.'" *Wiggins v. PNC Bank, Kentucky, Inc.*, 988 S.W.2d 498, 501 (Ky. App. 1998) (citation omitted).

Furthermore, if the trust does waive some fiduciary duties, KRS 386B.10-080 would prevent such self-dealing to some extent. KRS 386B.10-080 states in relevant part:

> (1) A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it:

(a) Relieves the trustee of liability for breach
of trust committed in bad faith or with
reckless indifference to the purposes of the
trust or the interests of the beneficiaries[.]

If the trust does waive Appellees' fiduciary duties, then there are sufficient allegations at this point to suggest they acted in bad faith or with reckless indifference to the interests of the other beneficiaries.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order which made the judgment on the pleadings orders final and appealable. We reverse and remand, however, the two orders granting the judgment on the pleadings. We hold that the trial court erred in concluding there were insufficient allegations of bad faith on the part of Appellees and no allegations of bad faith or breach of duties on the part of Mr. Mountjoy.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES AL J. SCHNEIDER COMPANY, DAVID OETKEN, TODD OETKEN, AND NANCY O'HEARN:

Donald L. Cox
Matthew P. Cox
Louisville, Kentucky

David S. Kaplan
Andrea N. Aikin
Louisville, Kentucky

Norbert J. Arrington
Liam H. Michener
Louisville, Kentucky

BRIEFS FOR APPELLEES/CROSS-APPELLANTS MARY S. MOSELEY AND DAWN M. HITRON:

R. Gregg Hovious
Dennis D. Murrell
Jennifer M. Barbour
Louisville, Kentucky